UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2010 JUN 16  P 4: 09

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| Sandra Elliott, individually and as the Administratrix of the Estate of Asher Tamara Glace <br><br> **Plaintiffs** <br><br> vs. <br><br> Daryl Roberts, Individually and in his Official Capacity as Chief of Police for the City of Hartford, The City of Hartford, and The State of Connecticut's Chief State Attorneys Christopher Morano and Kevin Kane, individually and in their Official Capacities. <br><br> **Defendants** | : <br> : <br> : <br> : <br> : <br> : **CIVIL ACTION NO.: 309-cv-00948 (AWT)** <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : **SECOND AMENDED COMPLAINT** <br> : <br> : <br> : |

## COMPLAINT

1. This lawsuit is brought pursuant to 42 U.S.C. § 1983 State Action, and Connecticut common law to redress constitutional violations and tort related damages. Additionally, the Plaintiffs also bring this action in violation of Connecticut General Statute §52-555. The court has Pendent Jurisdiction over the state claims pursuant to 42 U.S.C. § 1367. The Plaintiffs demands damages exceeding $100,000.01 from the Defendants. The Plaintiffs also claims other equitable, legal, and injunctive relief for injuries sustained as a result of the Defendants' unlawful conduct.

## AMENDED PLEADING

2. Plaintiffs move to amend their complaint pursuant to F.R.C.P. 15(a)

## VENUE

3.  Venue is proper pursuant to 28 U.S.C. 1391(b).

## NOTICE OF CLAIM

4.    In conjunction with certain causes of action, Plaintiffs filed a timely notice of claim and intent to sue letter with Defendant City of Hartford dated September 14, 2007. A notice of claim was also filed with the State of Connecticut Office of the Claims Commissioner against Defendant State of Connecticut Office of the State Attorney on June 16, 2008 in compliance with Connecticut General Statutes with respect to the injuries complained of herein. The Notice of Claim as against the State of Connecticut Office of the State Attorney (Chief State Attorney) was dismissed by the Claim Commissioner in April 2010.

## THE PARTIES

5.  Plaintiff Sandra Elliott as Administratrix of the Estates of Asher Tamara Glace, is the mother of Plaintiff Asher Tamara Glace, now deceased. At all relevant times, Ms. Elliott cohabitated with her daughter at 470 Cornwall Street, Hartford, Connecticut 06112.

6.  Plaintiffs Asher Tamara Glace, now deceased resided at 470 Cornwall Street, Hartford, Connecticut 06112 with her mother prior to her murder on June 16, 2007. Ms. Glace was the "chief witness to a murder" as defined by Defendants, which occurred on or around February 14, 2005 at the Cleveland Café, Main Street, Hartford. On or around June 16, 2007, Ms. Glace died in a hail of gunfire in the driveway of the home she shared with her mother.

2

7. Defendant Daryl Roberts was the Chief of Police for the City of Hartford at the time of the incident, the subject of this complaint.

8. Defendant The City of Hartford is a municipal corporation organized and existing under and by virtue of the laws of the State of Connecticut, and is situated in the Hartford County.

9. Defendants Christopher Morano and Kevin Kane (hereinafter Chief State Attorneys) were the Chief State Attorneys at the time of the shooting at Cleveland Café and Ms. Glace's murder respectively. At the time of the incident, these defendants were the prosecutorial officials charged with the responsibility of reviewing all witnesses to serious crimes to determine if they were at risk of harm. These defendants also had authority to promulgate regulations and coordinate the efforts of state and local agencies to provide protective services to witnesses involved with serious felonies.

## **STATEMENT OF THE FACTS**

10. On or around February 14, 2005, Asher Glace witnessed a shooting related murder at an establishment termed Cleveland Café, which is located on Main Street in Hartford's North end.

11. At the time of the incident, the shooting victim allegedly fell dead upon Ms. Glace on the floor of the establishment.

12. After the incident, Officers from The Hartford Police arrived on the scene and, Ms. Glace was taken into custody by the Hartford Police Department and was required to provide a statement about the incident, including providing the names of the victim and that of the person or persons who allegedly committed the murder.

3

13. On information and belief, Ms. Glace provided Anthony Thompson's name to the Hartford Police as the person who shot the victim at the Cleveland Café on February 14, 2005.

14. At some point around March 15, 2005, Anthony Thompson the alleged shooter fled the jurisdiction of the United States and allegedly went into hiding in Jamaica. A few months after the incident, Anthony Thompson was subsequently taken into custody in Jamaica and was extradited back to Connecticut.

15. After Anthony Thompson was brought back to Connecticut to face justice, an informant emerged by way of a cellmate of Anthony Thompson at the state prison where he was held.

16. On information and belief, The Chief State Attorneys, as well as, the City of Hartford's Police Department learned from the "jailhouse informant" that Plaintiff Asher Tamara Glace's life was possibly in danger, because she was required to testify against Anthony Thompson about the Cleveland Café shooting.

17. Prior to Mr. Thompson's trial and conviction, The Chief of Police for The Hartford Police Department, Daryl Roberts designated by way of publication that Ms. Glace was "the chief witness in the upcoming trial of Anthony Thompson" on the department's web page for the entire world to see and access.

18. On information and belief, Chief Roberts was required to train his subordinates on the serious dangers posed in labeling a witness "the chief witness in a case involving a serious felony."

19. At all times relevant to this complaint, The Chief State Attorneys were mandated by law to review all witnesses to serious felonies to determine the witnesses' risk of harm, and to provide protective services to such witnesses critical to criminal investigations and prosecutions.

4

20. At all times relevant to the complaint, The Chief State Attorneys were mandated by law to coordinate the efforts of state agencies, as well as the City of Hartford's Police Department to provide protective services to Ms. Glace.

21. On information and belief, The Chief State Attorneys, and Chief Roberts had full knowledge, or should have had full knowledge about the injuries Ms. Glace and her next of kin would suffer as a result of their failure to provide protective services to Ms. Glace after Ms. Glace was designated as the chief witness in Anthony Thompson's case.

22. On information and belief, The Chief State Attorneys, and Chief Roberts had full knowledge, or should have had full knowledge about the injuries Ms. Glace and her next of kin would suffer as a result of their failure to develop statewide protocols and train their subordinates as to the mechanisms to insure that protective services were provided to Ms. Glace pursuant to Connecticut Public Act 99-240 (C.G.S.A § 54-82t).

23. On information and belief, The City of Hartford as a result of a policy, practice, custom and usage did not properly train its employees to properly protect witnesses who were compelled to testify in criminal matters.

## COUNT I AS AGAINST DEFENDANT CHIEF ROBERTS
## (42 U.S.C. § 1983)

24. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 23.

25. At all times relevant hereto, Defendant Daryl Roberts was employed by Defendant City of Hartford as its Chief of Police and acted under color of law.

5

26. The acts and omissions of Defendant Daryl Roberts, including, but not limited to his failure to take appropriate steps to protect Ms. Glace from the known threats Anthony Thompson and his confederates posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his confederates constituted deliberate indifference to Ms. Glace's constitutional rights secured by the Forth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

27. Defendant Roberts' conduct as contained herein is an example of police conduct which shocks the conscience and constitutes substantive due process violations.

28. Due to Defendant Roberts' due process violations, Ms. Glace was murdered by Anthony Thompson and his confederates and Plaintiffs have suffered damages.

## COUNT II AS AGAINST DEFENDANT ROBERTS
### (42 U.S.C. § 1983)

29. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 28.

30. At all times relevant hereto, Defendant Daryl Roberts was employed by Defendant City of Hartford as its Chief of Police and acted under color of law.

31. The acts and omissions of Defendant Daryl Roberts, including, but not limited to his failure to take appropriate steps to protect Ms. Glace from the known threats Anthony Thompson and his confederates posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his confederates constituted deliberate indifference to Ms. Glace's constitutional rights secured by the Forth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

6

32. Defendant Roberts' conduct as contained herein increased the risk of Ms. Glace being harmed by Anthony Thompson and his conspirators.

33. Defendant Roberts' conduct rendered Ms. Glace more vulnerable because he publicly identified her as "the chief witness" in Anthony Thompson's murder trial, thereby creating the danger to which she eventually succumbed.

34. Defendant Roberts' conduct is an example of police conduct which shocks the conscience and constitutes substantive due process violations.

35. Defendant Roberts' conduct did not present competing priorities which would have hampered his decision to place her in the state's protective services. At a minimum, Defendant Roberts failed to conduct an investigation into the harm Ms. Glace faced as a result of her being designated as "the chief witness" in Anthony Thompson's murder trial.

36. Due to Defendant Roberts' due process violations, Ms. Glace's harm was foreseeable, and was willfully disregarded by the defendant. Additionally, by taking Ms. Glace into custody on February 14, 2005, and ultimately identifying her as the "chief witness," Defendant Roberts established a relationship between his department and Ms Glace while creating the opportunity for her to be harmed.

37. Due to Defendant Roberts' due process violations, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT III AS AGAINST DEFENDANT ROBERTS
## (42 U.S.C. § 1983)

38. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 35.

7

39. At all times relevant hereto, Defendant Daryl Roberts was employed by Defendant City of Hartford as its Chief of Police and acted under color of law.

40. The acts and omissions of Defendant Daryl Roberts, including, but not limited to his failure to take appropriate steps to protect Ms. Glace from the known threats Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his confederates constituted deliberate indifference to Ms. Glace's constitutional rights secured by the Forth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

41. Defendant Roberts' conduct as contained herein established a special relationship with Ms. Glace and the increased the risk of Ms. Glace being harmed by Anthony Thompson and his conspirators.

42. Defendant Roberts' conduct rendered Ms. Glace more vulnerable because he designated her "the chief witness" in Anthony Thompson's murder trial, thereby creating the danger to which she eventually succumbed.

43. Defendant Roberts' conduct is an example of police conduct which shocks the conscience and constitutes substantive due process violations. Pursuant to Connecticut law, Ms. Glace should have been identified as a witness critical to the criminal investigation and prosecution of Anthony Thompson and his coconspirators, but Defendant Roberts failed to investigate the potential risk of harm to Ms. Glace.

44. Due to Defendant Roberts' due process violations, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

8

## COUNT IV AS AGAINST DEFENDANTS MORANO AND KANE IN THEIR INDIVIDUAL CAPACITIES, AND AS CHIEF STATE ATTORNEYS (42 U.S.C. § 1983)

45. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 44.

46. At all times relevant hereto, Defendants Morano and Kane were employed by the State of Connecticut as Chief State Attorneys and they acted under color of law.

47. The acts and omissions of Defendants Morano and Kane, including, but not limited to their failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's constitutional rights secured by the Forth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

48. At a minimum, Defendants Morano and Kane were specifically mandated by law to conduct a review into Ms. Glaces' need for protective services, but they failed to conduct any such reviews or investigations.

49. Defendants Morano and Kane's conduct are examples of public officials conduct which shocks the conscience and constitutes substantive due process violations.

50. Due to Defendants Morano and Kane's due process violations, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT V AS AGAINST DEFENDANTS MORANO AND KANE IN THEIR INDIVIDUAL CAPACITIES, AND AS CHIEF STATE ATTORNEYS (42 U.S.C. § 1983)

51. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 50.

52. At all times relevant hereto, Defendants Morano and Kane were employed by the State of Connecticut as Chief State Attorneys and they acted under color of law.

53. The acts and omissions of, including, but not limited to their failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's constitutional rights secured by the Forth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

54. By law, a special relationship was established between Ms. Glace as witness to a serious felony, and the Defendants as protectors, but neither Defendant fulfilled their mandated responsibilities to Ms. Glace.

55. Defendants Morano and Kane were compelled by state law to review Ms. Glace's need for witness protection, and they failed to review her risk of harm, or offered her any protection as provided for by Connecticut law.

56. At a minimum, Defendants Morano and Kane were required by law to conduct a review into Ms. Glace's need for protective services, but they failed to conduct any such reviews or investigations.

57. Defendants Morano and Kane's conduct are examples of public officials conduct which shocks the conscience and constitutes substantive due process violations.

58. Due to Defendants Morano and Kane's due process violations, Ms. Glace 's harm was foreseeable, and was willfully disregarded by the defendant, especially as here where the harm caused to Ms. Glace is the exact kind of harm contemplated by the law mandating these defendants conduct with respect to providing protective services.

59. Due to Defendants Morano and Kane's due process violations, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT VI AS AGAINST DEFENDANTS MORANO AND KANE IN THEIR INDIVIDUAL CAPACITIES, AND AS CHIEF STATE ATTORNEYS (42 U.S.C. § 1983)

60. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 59.

61. At all times relevant hereto, Defendants Morano and Kane were employed by the State of Connecticut as Chief State Attorneys and they acted under color of law.

62. The acts and omissions of Defendants Morano and Kane, including, but not limited to their failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's constitutional rights secured by the Forth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. § 1983.

11

63. At a minimum, Defendants Morano and Kane were specifically mandated by law to conduct a review into Ms. Glaces' need for protective services, but they failed to conduct any such reviews or investigations.

64. Defendants Morano and Kane's conduct are examples of public officials conduct which shocks the conscience and constitutes substantive due process violations.

65. Due to Defendants Morano and Kane's due process violations by way of their failure to conduct a review or investigation into the risk she faced as a witness critical to their criminal investigation and prosecution, they created the danger to which she eventually succumbed.

66. Due to Defendants Morano and Kane's due process violations, Ms. Glace's harm was foreseeable, and was willfully disregarded by the defendant. The harm caused to Ms. Glace is the exact kind of harm contemplated by the law mandating these defendants conduct with respect to providing protective services.

67. Due to Defendants Morano and Kane's due process violations, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT VII AS AGAINST DEFENDANT ROBERTS
## (Gross Negligence)

68. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 67.

69. At all times relevant hereto, Defendant Daryl Roberts was employed by Defendant City of Hartford as its Chief of Police and acted under color of law.

70. The acts and omissions of Defendant Daryl Roberts, including, but not limited to his failure to take appropriate steps to protect Ms. Glace from the known threats Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson. Under the circumstances, Defendant Roberts was breached his duty to Ms. Glace and was the legal cause of the harm to which she eventually succumbed.

71. On information and belief, Defendant Roberts committed gross negligence by publicly identifying Ms. Glace on his department's web cite as "the chief witness in the criminal investigation of Anthony Thompson.

72. On information and belief, Defendant Roberts' conduct placed Ms. Glace in imminent harm arising from the dangerous condition he placed her in by virtue of his publicly identifying her as the chief witness in Anthony Thompson's murder investigation.

73. On information and belief, Defendant Roberts' conduct led to the foreseeable harm which befell Ms. Glace, especially given the fact that Ms. Glace and the alleged coconspirators resided in the same relative geographic area, and that Anthony Thompson's trial was close to commencing.

74. Due to Defendant Roberts' conduct, Ms. Glace's harm was foreseeable, and was willfully disregarded by the defendant. The harm caused to Ms. Glace is the exact kind of harm contemplated by the law mandating protective services for witnesses like Ms. Glace. Under the circumstances, Defendant Roberts acted outside the bounds of the conduct required of a reasonable government official charged with the responsibility to protect witnesses during a criminal prosecution, especially where Ms. Glace was publicly identified by this defendant.

75.

76. Due to Defendant Roberts' due process violations, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT VIII AS AGAINST DEFENDANTS MORANO AND KANE IN THEIR INDIVIDUAL CAPACITIES, AND AS CHIEF STATE ATTORNEYS
### (Gross Negligence)

77. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 76.

78. At all times relevant hereto, Defendants Morano and Kane were employed by the State of Connecticut as Chief State Attorneys and they acted under color of law.

79. The acts and omissions of Defendants Morano and Kane, including, but not limited to their failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's right to be free from harm.

80. At a minimum, Defendants Morano and Kane were specifically mandated by law to conduct a review into Ms. Glaces' need for protective services, but they failed to conduct any such reviews or investigations.

81. Defendants Morano and Kane's conduct are examples of public officials conduct which shocks the conscience and constitutes substantive due process violations.

82. Defendants Morano and Kane's breached their duty to Ms. Glace by their failure to conduct a review or investigation into the risk she faced as a witness critical to their criminal investigation and prosecution.

83. Due to Defendants Morano and Kane's due process violations, Ms. Glace's harm was foreseeable, and was willfully disregarded by the defendant. The harm caused to Ms. Glace is the exact kind of harm contemplated by the law mandating these defendants conduct with respect to providing protective services. Under the circumstances, the defendants acted outside the bounds of the conduct required of a reasonable government official charged with the responsibility to protect witnesses during a criminal prosecution, especially where Ms. Glace was publicly identified by Defendant Roberts.

84. Due to Defendants Morano and Kane's due process violations, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT IX AS AGAINST DEFENDANT CITY OF HARTFORD
### (Monell Claim)

85. The plaintiffs repeats, re-alleges and incorporates by reference paragraphs 1 through 84.

86. Upon information and belief, the death of Ms. Glace was the result of a policy, practice, custom and usage of Defendant City of Hartford in not properly protecting witnesses who were compelled to testify in criminal matters.

87. Upon information and belief, the murder of Ms. Glace was the result of a policy, practice, custom and usage of Defendant City of Hartford's failure to properly supervise its employees to ensure that they protect witnesses who were compelled to testify in criminal matters.

15

88. Upon information and belief, the murder of Ms. Glace was the result of a policy, practice, custom and usage of Defendant City of Hartford's failure to properly train its employees to ensure that they protect witnesses who were compelled to testify in criminal matters.

89. Due to Defendant City of Hartford conduct, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT X AS AGAINST DEFENDANTS MORANO AND KANE IN THEIR INDIVIDUAL CAPACITIES, AND AS CHIEF STATE ATTORNEYS
### (Supervisory Liability)

90. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 89.

91. At all times relevant hereto, Defendants Morano and Kane were employed by the State of Connecticut as Chief State Attorneys and they acted under color of law.

92. The acts and omissions of Defendants Morano and Kane, including, but not limited to their failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's right to be free from harm.

93. On information and belief, Defendants Morano and Kane were responsible for training and supervising their employees in the performance of their duties with respect to providing protective services to witnesses involved in the investigation of serious felonies.

94. At a minimum, Defendants Morano and Kane, were specifically mandated by law to conduct a review into Ms. Glace's need for protective services, but they failed to conduct any such reviews or investigations.

95. Defendants Morano and Kane's conduct are examples of public officials conduct which shocks the conscience.

96. Defendants Morano and Kane's breached their duty to Ms. Glace by their failure to conduct a review or investigation into the risk she faced as a witness critical to their criminal investigation and prosecution.

97. On information and belief, Defendants Morano and Kane failed to train and supervise their employees in connection with proper protocols, procedures and techniques with respect to providing protective services to witnesses involved in the investigation of serious felonies.

98. Due to Defendants Morano and Kane's conduct, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT XI AS AGAINST DEFENDANTS ROBERTS IN HIS INDIVIDUAL CAPACITIES, AND AS CHIEF OF POLICE FOR THE CITY OF HARTFORD
### (Supervisory Liability)

99. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 98.

100. At all times relevant hereto, Defendant Roberts was employed by the City of Hartford Police Department as its Chief of Police, and he acted under color of law.

17

101. The acts and omissions of Defendant Roberts, including, but not limited to his failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's right to be free from harm.

102. On information and belief, Defendant Roberts was responsible for training and supervising his employees in the performance of their duties with respect to providing protective services to witnesses involved in the investigation of serious felonies.

103. Defendant Roberts' conduct is an example of a public official's conduct which shocks the conscience.

104. Defendant Roberts breached his duty to Ms. Glace by his failure to conduct a review or investigation into the risk she faced as a witness critical to his department's criminal investigation.

105. On information and belief, Defendant Roberts failed to train and supervise his employees in connection with proper protocols, procedures and techniques with respect to providing protective services to witnesses involved in the investigation of serious felonies.

106. Due to Defendant Roberts' conduct, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT XII AS AGAINST DEFENDANTS MORANO AND KANE IN THEIR
## INDIVIDUAL CAPACITIES, AND AS CHIEF STATE ATTORNEYS
### (Negligent Infliction of Emotional Distress)

107. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 106.

108. At all times relevant hereto, Defendants Morano and Kane were employed by the State of Connecticut as Chief State Attorneys and they acted under color of law.

109. The acts and omissions of Defendants Morano and Kane, including, but not limited to their failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's right to be free from harm.

110. On information and belief, Defendants Morano and Kane were responsible for training and supervising their employees in the performance of their duties with respect to providing protective services to witnesses involved in the investigation of serious felonies, but they failed to provide the protection mandated by law.

111. As a result of the defendants conduct, the Plaintiff Ms Sandra Elliott has been permanently injured and damaged, after she discovered her daughter's bullet riddled body in her driveway.

112. . Due to Defendants Morano and Kane's conduct, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

# COUNT XIII AS AGAINST DEFENDANT ROBERTS IN HIS INDIVIDUAL CAPACITIES, AND AS CHIEF OF POLICE FOR THE CITY OF HARTFORD

## (Negligent Infliction of Emotional Distress)

113. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 112.

114. At all times relevant hereto, Defendant Roberts was employed by the City of Hartford as its Chief of Police, and he acted under color of law.

115. The acts and omissions of Defendant Roberts, including, but not limited to his failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's right to be free from harm.

116. On information and belief, Defendant Roberts was responsible for training and supervising his employees in the performance of their duties with respect to providing protective services to witnesses involved in the investigation of serious felonies, but he failed to provide the protection mandated by law.

117. As a result of the defendant's conduct, the Plaintiff Ms Sandra Elliott has been permanently injured and damaged, after she discovered her daughter's bullet riddled body in her driveway.

118. . Due to Defendant Roberts' conduct, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT XIV AS AGAINST DEFENDANTS MORANO AND KANE IN THEIR
## INDIVIDUAL CAPACITIES, AND AS CHIEF STATE ATTORNEYS
### (Loss of Affection and Society)

119. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 118.

120. At all times relevant hereto, Defendants Morano and Kane were employed by the State of Connecticut as Chief State Attorneys and they acted under color of law.

121. The acts and omissions of Defendants Morano and Kane, including, but not limited to their failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's right to be free from harm.

122. On information and belief, Defendants Morano and Kane were responsible for training and supervising their employees in the performance of their duties with respect to providing protective services to witnesses involved in the investigation of serious felonies, but they failed to provide the protection mandated by law.

123. As a result of the defendant's conduct, the Plaintiff Ms Sandra Elliott has been permanently injured and damaged because she has permanently lost the affection and society of her daughter, after she discovered her daughter's bullet riddled body in her driveway.

124. . Due to Defendants Morano and Kane's conduct, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## COUNT XV AS AGAINST DEFENDANT ROBERTS IN HIS INDIVIDUAL CAPACITIES, AND AS CHIEF OF POLICE FOR THE CITY OF HARTFORD

### (Loss of Affection and Society)

125. The plaintiff repeats, re-alleges and incorporates by reference paragraphs 1 through 124.

126. At all times relevant hereto, Defendant Roberts was employed by the City of Hartford as its Chief of Police, and he acted under color of law.

127. The acts and omissions of Defendant Roberts, including, but not limited to his failure to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators constituted deliberate indifference to Ms. Glace's right to be free from harm.

128. On information and belief, Defendant Roberts was responsible for training and supervising his employees in the performance of their duties with respect to providing protective services to witnesses involved in the investigation of serious felonies, but he failed to provide the protection mandated by law.

129. . Due to Defendant Roberts' conduct, Ms. Glace was murdered by Anthony Thompson and his coconspirators, and the Plaintiffs have suffered damages.

130. As a result of the defendant's conduct, the Plaintiff Ms Sandra Elliott has been permanently injured and damaged because she has permanently lost the affection and society of her daughter, after she discovered her daughter's bullet riddled body in her driveway.

22

131. . Due to Defendant Roberts' conduct, Ms. Glace was murdered by Anthony
Thompson and his coconspirators, and the Plaintiffs have suffered damages.

## INJUNCTIVE RELIEF

The Plaintiffs seeks an order of this court requiring the Defendants to adopt policies
ensuring that similarly situated persons are not put in danger as in the present case.
That the State of Connecticut affords adequate protection to individuals compelled to
testify at criminal trials according to law; and that other similarly situated persons
having no adequate remedy at law are placed in the care and custody of similarly
situated Defendants, where others such as Ms. Glace have suffered and will continue to
suffer irreparable injury because of the unlawful actions of the Defendants.

## DEMAND FOR RELIEF

Wherefore, the Plaintiff requests that this Court:

Issue an order against all the appropriate Defendants awarding the estate
of Ms. Glace damages for her loss of life, and career opportunities, mental and emotional
distress, pain and suffering, loss of love, affection and society.

Issue an order against all the Defendants awarding the Administratrix for mental
and emotional distress, loss of love, affection and society, and loss of her financial
support.

Issue an order against all the appropriate Defendants awarding Plaintiffs
punitive damages where appropriate;

Issue an order against all the appropriate Defendants awarding Plaintiffs
costs for prosecuting this action, including reasonable attorney's fees.

23

Issue an order against all the appropriate Defendants awarding Plaintiff pre- and post judgment interest.

Issue an order awarding to Plaintiff such other relief, legal or equitable, as may be just and proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury as to all issues to which they are so entitled by law.

PLAINTIFFS.,
SANDRA ELLIOTT Individually and as
ADMINISTRATRIX OF THE ESTATE OF
ASHER TAMARA GLACE


By:_____

Richard C. Gordon, Esq., us Dist Ct # 27288
Law Office of Richard C. Gordon, Esq., (N.J.)
697 Blue Hills Avenue
Hartford, CT 06112
(860) 534-0547
(860) 769-0553


Please enter my appearance as attorney for the Plaintiff.


_____
Richard C. Gordon, Esq., (N.J.)

24

## CETRTIFICATION OF MAILING

I certify that copies of this document served by first class mail to the defendants at the following addresses and on the following dates:

City of Hartford
Office of the Corporation Counsel
550 Main Street
Hartford, CT 06103

On November 12, 2009

      -and-

State of Connecticut Office of the Attorney General
Litigation Section
55 Elm Street
Hartford, CT 06103

On June 16, 2010

By:_____

Richard C. Gordon, Esq., us Dist Ct # 27288
Law Office of Richard C. Gordon, Esq., (N.J.)
697 Blue Hills Avenue
Hartford, CT 06112
(860) 206-1716
(860) 534-0547 Cell
(860) 769-0553 Fax