**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SANDRA ELLIOTT & THE ESTATE | : | CIVIL ACTION NO.: |
| OF ASHER TAMARA GLACE | : | 3:09 CV 00948 (AWT) |
| Plaintiffs | : | |
| vs. | : | |
| | : | |
| DARYL ROBERTS, THE CITY OF | : | |
| HARTFORD, CHRISTOPHER MORANO & | : | |
| KEVIN KANE | : | |
| Defendants | : | JUNE 30, 2010 |

## DEFENDANT DARYL ROBERTS AND THE CITY OF HARTFORD'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

I.     FACTUAL BACKGROUND

By way of the Second Amended Complaint dated June 16, 2010, the

Plaintiff Sandra Elliott alleges that her daughter, the deceased Plaintiff Asher

Tamara Glace, witnessed a murder in the City of Hartford on or about February

14, 2005. (Complaint, ¶¶ 5, 6.)  The Plaintiff's decedent Glace provided the

Defendant City of Hartford Police Department (hereinafter "HPD") with a

statement about the incident and the name of the person who allegedly

committed the murder, Anthony Thompson. (Compl., ¶12, 13.)  The Plaintiffs

further allege that the Defendant Daryl Roberts, the chief of police for the

Hartford Police Department, "designated by way of publication that Ms. Glace

was 'the chief witness in the upcoming trial of Anthony Thompson' on the department web page for the entire world to see and access." (Compl., ¶17.)  On June 16, 2007, the Plaintiff's decedent "Glace was murdered by Anthony Thompson and his confederates." (Compl, ¶6, Count One, ¶28.)

As to the Defendants Daryl Roberts and the City of Hartford, the Plaintiff alleges that: the Defendants should not have placed her name on the Hartford Police Department website as "the chief witness in a criminal investigation"; the Defendants should have protected her from Anthony Thompson and his co-conspirators and the Defendants should have apprehended Thompson's co-conspirators before they harmed Ms. Glace.  (Compl., Count One, ¶26, Count Seven, ¶71.)  Those three allegations are repeated over the eight counts of the Complaint that are directed to the Defendants Roberts and the City of Hartford.

The Plaintiffs allege in Counts One, Two and Three that the Defendant Roberts violated 42 U.S.C. §1983.  Count Seven claims gross negligence on the part of the Defendant Roberts.  Count Nine is a Monell claim against the Defendant City of Hartford.  Count Eleven is a supervisory liability cause of action against the Defendant Roberts.  Count Thirteen sounds in negligent infliction of emotional distress against the Defendant Roberts.  Count Fifteen is a loss of affection cause of action against the Defendant Roberts.

2

The instant motion to dismiss is directed to Counts One, Two, Three, Seven, Nine, Eleven, Thirteen and Fifteen only.

## II.     ARGUMENT

### A.     Standard of Review

In ruling on a motion to dismiss, the court is limited to the facts set forth on the face of the complaint, any documents attached thereto as exhibits or incorporated by reference, and matters of which the court may take judicial notice.  Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). The court must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  Dismissal is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."  Leeds v. Meltz,  85 F.3d 51, 53 (2d Cir. 1996).

**B.**     **Counts One, Two and Three do not state 42 U.S.C. §1983 claims against the Defendant Roberts.**

Title 42 of the United States Code § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…

Id.   The first three counts seem to contain the same allegations that the Defendant Roberts violated the Fourth and Fourteenth Amendments by "designating' the Plaintiff's decedent "the chief witness" in a murder trial on the City of Hartford's website.  (Compl., ¶17.)

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  Id.

There are no facts alleged to suggest any Fourth Amendment violation such as false arrest, excessive force or unlawful search or seizure ever took

place.   The complaint does not state a cause of action as to the Fourth Amendment.

As to the Fourteenth Amendment to the United States Constitution claim, that amendment provides in Section 1: "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  Id.

The Plaintiff alleges that the Defendant Roberts' conduct "shocks the conscience and constitutes substantive due process violations."  (Compl., Count One, ¶27, Count Two, ¶34, Count Three, ¶43.)  "For a substantive due process claim to survive a Rule 12(b)(6) dismissal motion, it must allege governmental conduct that is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience."  Velez v. Levy, 401 F.3d 75, 93 (2nd Cir. 2005). "The measure of what is conscience-shocking is no calibrated yard stick." Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 252 (2d Cir.2001). "Nevertheless, malicious and sadistic abuses of power by government officials, intended to oppress or to cause injury and designed for no legitimate government purpose, unquestionably shock the conscience." Id.

There are no facts alleged to suggest that the Defendant Roberts acted maliciously or sadistically in this case.  In addition, this Court granted a motion to dismiss the first complaint on May 17, 2010, finding that the Plaintiffs did not state any substantive due process violation.  The instant complaint contains no significant changes with regards to the Defendant Roberts.  Count One, Two and Three fail to state a cause of action.

### C.   Count Seven fails to state a claim against the Defendant Roberts for gross negligence.

The Plaintiffs allege in Count Seven, "Defendant Roberts committed gross negligence by publicly identifying Ms. Glace on his department's web cite (sic) as the 'chief witness in the criminal investigation of Anthony Thompson'."  (Compl., Count Seven, ¶71.)

Simply put, "Connecticut does not recognize degrees of negligence and, consequently, does not recognize the tort of gross negligence as a separate basis of liability."  Hanks v. Powder Ridge Restaurant Corp.  276 Conn. 314, 337, 747-48 (2005).

In addition, the statute of limitations for a negligence action in Connecticut is two years.  Connecticut General Statutes §52-584.  The Plaintiffs allege that the Plaintiff's decedent was killed on or around June 16, 2007.  (Compl., ¶6.)

The Plaintiffs did not serve a complaint alleging negligence on the part of either of the Defendants on or before June 16, 2009.   Count Seven must be dismissed.

### D.   <u>Count Nine fails to state a Monell claim</u>.

The Plaintiffs allege that the Defendant City of Hartford failed to protect witnesses, failed to supervise its employees to ensure that they protect witnesses and failed to train its employees to protect witnesses.  (Compl., Count Nine, ¶¶ 86-88.)  The Plaintiffs alleges that all of these failures were the result of a policy, custom or practice of the Defendant City of Hartford.  (Compl., Count Nine, ¶¶86-88.)

"Local governing bodies . . . can be sued directly under 42 U.S.C. §1983 for monetary, declaratory, or injunctive relief where . . .  the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." <u>Monell v. New York City Department of Social Services</u>, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).  "A municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under 42 U.S.C. §1983 on a respondeat superior theory." <u>Id</u>. at 691.  "To hold a municipality liable in [an action under <u>Monell</u>], a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes

the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir.1995).

It is highly unlikely that actions taken in one criminal investigation would rise to the level of an official policy or custom. In addition, if Counts One, Two and Three are dismissed in favor of the Defendant Roberts, there can be no Monell claim against the Defendant City of Hartford, as there would be no denial of a constitutional right. As such, Count Nine fails to state a claim upon which relief can be granted and should be dismissed.

### E.    Count Eleven fails to state a claim of "supervisory liability."

The "Supervisory Liability" claim in Count Eleven appears to be premised on the allegations that the Defendant Roberts failed to train and supervise employees in protecting witnesses. (Compl., Count Eleven, ¶¶102, 105.)

It is not clear if Count Eleven is another negligence claim or another §1983 claim. The Plaintiffs have named only one defendant from the City of Hartford, the Defendant Roberts, as a party to this action. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868  (2009).

8

As argued above, the Plaintiffs have stated no negligence or §1983 cause of action.  If Counts One, Two and Three are dismissed in favor of the Defendant Roberts, Count Eleven must fail as well.  As such, Count Eleven fails to state a claim upon which relief can be granted and should be dismissed.

**F.   Count Thirteen fails to state a claim of negligent infliction of emotional distress.**

In what purports to be a cause of action for negligent infliction of emotional distress, the Plaintiffs' allege in Count Thirteen, "the Plaintiff Sandra Elliott has been permanently injured and damaged after she discovered her daughter's bullet ridden body in her driveway.  (Compl., Count Thirteen, ¶117.)

Similar to the claim of gross negligence as discussed in Section C above, the statute of limitations for the tort of negligent infliction of emotional distress is two years. Connecticut General Statutes §52-584; see Rivera v. Double A Transportation, Inc., 248 Conn. 21, 31 (1999).  The Plaintiffs did not serve a complaint to the Defendants before the two year statute of limitations.

Further, the Defendant Roberts is entitled to governmental immunity for actions based on negligence.  Connecticut General Statutes §52-557n; see Violano v. Fernandez, 280 Conn. 310, 318-20 (2006).  Count Thirteen should be dismissed.

### G.    Count Fifteen fails to state a cause of action for loss of affection.

The Plaintiffs allege that as a result of the Defendant Roberts' conduct, "the Plaintiff Ms. Sandra Elliott has been permanently injured and damaged because she has permanently lost the affection and society of her daughter." (Compl., Count Fifteen, ¶130.)

First, the majority of Connecticut Superior Court decisions have held that there is no cause of action for loss of affection between a parent and child. See Ferrera v. Side Street Grille, 2008 WL 3852453 (Conn. Super.)(attached as Exhibit A.)  Second, Count Fifteen does not state a cause of action against the Defendants if Counts One, Two, Three, Seven, Nine, Eleven and Thirteen are dismissed, as the loss of affection claim is not a separate cause of action.  Count Fifteen fails to state a cause of action.

### III.    CONCLUSION

For the foregoing reasons, the Defendants Daryl Roberts and the City of Hartford respectfully move this Court to grant its motion to dismiss Count One, Two, Three, Seven, Nine, Eleven, Thirteen and Fifteen of the Plaintiffs' Second Amended Complaint.

THE DEFENDANTS
DARYL ROBERTS &
THE CITY OF HARTFORD

BY:/s/ Jonathan H. Beamon
Jonathan H. Beamon
Assistant Corporation Counsel
Its Attorney
550 Main Street
Hartford, CT 06103
Federal Bar No. ct22937
Telephone (860) 757-9700
Facsimile (860) 722-8114
Email : beamj001@hartford.gov

## CERTIFICATION

This is to certify that on June 30, 2010, a copy of the foregoing

Memorandum of Law in Support of Motion to Dismiss was filed electronically and

served by mail on anyone unable to accept electronic filing.  Parties may access

this filing through the Court's CM/ECF System.

Richard C. Gordon, Esq.
697 Blue Hills Avenue
Hartford, CT   06112

Terrence M. O'Neill, Esq.
Assistant Attorney General
100 Sherman Street
Hartford, CT   06105

/s/ Jonathan H. Beamon
Jonathan H. Beamon

# EXHIBIT A

Westlaw.

Page 1

Not Reported in A.2d, 2008 WL 3852453 (Conn.Super.), 45 Conn. L. Rptr. 873
(Cite as: 2008 WL 3852453 (Conn.Super.))

C
    UNPUBLISHED OPINION. CHECK COURT
            RULES BEFORE CITING.


            Superior Court of Connecticut,
            Judicial District of New Haven.
                Joseph FERRARA
                        v.
                SIDE STREET GRILLE.
                No. CV-07-5013480-s.

                    July 18, 2008.

                West KeySummary
Parent and Child 285 €⇝7(1)

285 Parent and Child
    285k7 Actions for Injuries To, Loss of Services,
Control, or Society of Child
        285k7(1) k. Right of Action in General. Most
Cited Cases
Connecticut law did not support a claim of filial
consortium. The mother and father of a 21-year-old
woman who was served at a bar and then allowed to
drive home brought a complaint against the bar
after the car their daughter was driving left the
road, crashed into a tree, and burst into flames res-
ulting in their daughter's death. C.G.S.A. § 30-102.


Parrett Porto Parese & Colwell P.C., Hamden, for
Joseph Ferrara.

Berchem Moses & Devlin PC, Milford, for Side
Street Grille LLC.


HOWARD F. ZOARSKI, Judge Trial Referee.

*1 In their second revised complaint, dated April
23, 2008, the plaintiffs, Joseph Ferrara, Karen Fer-
rara, and the estate of Adrienne Ferrara, allege that
on December 19, 2006, their twenty-year-old
daughter, Adrienne Ferrara, patronized the Side
Street Grille, where she was served alcohol by Carl

Walters, became patently crapulous, and was never-
theless permitted to drive home. During her trip
home from the Side Street Grille, her car left the
road and crashed into a tree, whereupon it burst into
flames. She died from wounds sustained in that ac-
cident on December 31, 2006. Against this back-
ground, the plaintiffs filed an eight-count complaint
against the defendants, Side Street Grille, LLC and
Carl Walters, alleging violation of General Statute
§ 30-102,[FN1] negligent service of alcohol, negli-
gent supervision, recklessness, and one count of fi-
lial consortium by the defendants for each of these
discrete causes of action.

        FN1. Commonly known as Connecticut's
        "Dram Shop Act," § 30-102 reads in per-
        tinent part: "If any person, by such person
        or such person's agent, sells any alcoholic
        liquor to an intoxicated person, and such
        purchaser, in consequence of such intoxic-
        ation, thereafter injures the person or prop-
        erty of another, such seller shall pay just
        damages to the person injured ... to be re-
        covered in an action under this section ..."

On April 30, 2008, the defendants filed a motion to
strike counts five, six, seven, and eight, of the
plaintiffs' second revised complaint on the ground
that Connecticut law does not recognize a claim for
filial consortium; this motion was supported by the
requisite memorandum of law.[FN2] The plaintiffs
filed an objection on May 14, 2008, which was also
supported by a memorandum of law. The substrat-
um of the plaintiffs' objection is that claims of filial
consortium should be recognized by this court be-
cause no Connecticut appellate court has yet to rule
definitively that filial consortium cannot be groun-
ded in Connecticut law and because such claims are
supported by principled public policy. A reply was
filed by the defendants on May 20, 2008.

        FN2. The court pauses to observe that the
        defendants' motion to strike failed to state
        the reason for the alleged legal insuffi-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2008 WL 3852453 (Conn.Super.), 45 Conn. L. Rptr. 873
**(Cite as: 2008 WL 3852453 (Conn.Super.))**

ciency of the plaintiffs' complaint in the motion itself, explicating its arguments regarding the legal insufficiency of the complaint in its memoranda of law only. "Simply stating that all of the counts are 'legally insufficient' and that they 'fail to allege any facts that would indicate [that the] defendant is liable to [the] plaintiffs' cannot be considered compliance with Practice Book § 10-41." *Stuart v. Freiberg,* 102 Conn.App. 857, 862, 927 A.2d 343 (2007). Indeed, Practice Book § 10-41 "clearly places the burden on the party filing the motion to strike to state the grounds of the claimed insufficiency in the text of the motion ... [I]f that procedure is not followed, it puts the party opposing the motion and the court to the task of trying to locate in the accompanying memorandum of law the various claims of insufficiency that are being made. In poorly organized briefs, such a hunt for grounds presents the hazard of missing claims or responding to observations that the movant does not actually assert as grounds." (Citation omitted; internal quotation marks omitted.) *Stuart v. Freiberg, supra,* 102 Conn.App. 862 at n. 2. The court, nevertheless, considers the defendants' motion in the form presented due to the plaintiffs' failure to object to its form and the nonjurisdictional nature of Practice Book § 10-41 . See, e.g., *Bouchard v. People's Bank,* 219 Conn. 465, 468 n. 4, 594 A.2d 1 (1991); *Morris v. Hartford Courant Co.,* 200 Conn. 676, 683 n. 5, 513 A.2d 66 (1986).

Before addressing the merits of this motion, the court sets forth the applicable standard of review. "A motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court." *Greco v. United Technologies Corp.,* 277 Conn. 337, 347, 890 A.2d 1269 (2006). "We take the facts to be those alleged in the complaint ... and we construe the complaint in the

manner most favorable to sustaining its legal sufficiency ... [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied ... Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly ... rather than narrowly." (Internal quotation marks omitted.) *Batte-Holmgren v. Commissioner of Public Health,* 281 Conn. 277, 294, 914 A.2d 996 (2007). Finally, while "all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted"; *Violano v. Fernandez,* 280 Conn. 310, 318, 907 A.2d 1188 (2006); "[a] motion to strike is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged." *Fort Trumbull Conservancy, LLC v. Alves,* 262 Conn. 480, 498, 815 A.2d 1188 (2003).

*2 Mindful of these considerations, the court now considers whether Connecticut law recognizes a claim for loss of filial consortium. Although our appellate courts have not yet addressed directly the legal sufficiency of a filial consortium claim, our Supreme Court's previous dicta has made it clear that both our common law tradition and relevant public policy considerations counsel against such claims. See *Mendillo v. Board of Education,* 246 Conn. 456, 484-85, 717 A.2d 1177 (1998) (declining to recognize claim of parental consortium and noting that there was no principled distinction between a loss of parental consortium and a loss of filial consortium). Indeed, the *Mendillo* Court explained that, in the context of parental consortium claims, "the balance of policy considerations fails to establish the additional justification necessary to support recognition of a legal duty on the part of a tortfeasor to compensate the children of the person whom the tortfeasor has harmed directly for their loss of consortium with their parent. We reach this conclusion primarily on the basis of the fact that recognition of the cause of action would require arbitrary limitations; the additional economic burden that recognition would impose on the general public; the uncertainty that recognition

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in A.2d, 2008 WL 3852453 (Conn.Super.), 45 Conn. L. Rptr. 873
**(Cite as: 2008 WL 3852453 (Conn.Super.))**

would yield significant social benefits; the substantial risk of double recovery; and the weight of judicial authority." *Id.* at 484-85, 717 A.2d 1177. These same policy considerations apply with equal weight in the context of filial consortium claims because there is not a principled distinction available to reconcile a decision to prohibit children from recovering the lost consortium from a dead or injured parent while contemporaneously allowing parents to recover the lost consortium from a dead or injured child.[FN3]

> FN3. There is little to recommend the plaintiffs' rejoinder to these policy perspectives. The plaintiffs do not offer any Connecticut cases decided after *Mendillo* that have located a legal footing for filial consortium in our law, and they fail to offer a meaningful distinction between parental consortium claims, which were proscribed by the *Mendillo* Court, and filial consortium claims, which the *Mendillo* Court counseled against in its dicta. See *Mendillo v. Board of Education, supra,* 246 Conn. 485 at n. 20. Similarly, the plaintiffs' argument that a parent's constitutional right to "the companionship, care, custody, and management of [their] child;" *Weinberger v. Weisenfelder,* 420 U.S. 636, 652, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) ; is at least as strong as the panoply of rights guaranteed by a marriage contract, thereby providing as strong an argument for filial consortium as for spousal consortium, is also of no moment. It bears emphasis that this very argument was stated in *Mendillo,* which reaffirmed that "[n]ot every constitutional right or relationship gives rise to tort liability for its violation." *Mendillo v. Board of Education, supra,* 246 Conn. at 493, 717 A.2d 1177. Moreover, our Supreme Court's focus in reaching its decision in *Mendillo* was the practical liability implications associated with allowing a cause of action for parental

consortium. See *Mendillo v. Board of Education, supra,* 246 Conn. at 456, 487-88, 717 A.2d 1177 (evaluating economic burden placed on general public, uncertainty of social benefits, and risk of double recovery in expanding third party liability). The *Mendillo* Court noted that, unlike spousal consortium, parental consortium claims were not limited by the "natural boundary" of there being only one spouse; multiple children and stepchildren could have parental consortium claims, each of which would generate additional marginal and administrative costs in insuring and litigating. *Id.,* at 488, 717 A.2d 1177. The same is equally true of filial consortium claims. Were multiple children to be injured or killed, both parents would have claims as to the loss associated with each child. Thus, while the type of foreseeable damage to personal interrelationships may be equally present in filial consortium claims as they are in spousal consortium claims, filial claims do not afford the same inherent limits on the number of potential claims that spousal consortium claims do.

This point was not lost upon our Supreme Court in *Mendillo,* which explicitly declined the invitation of various amici to expand the claim of parental consortium directly at issue there to include recognition of filial consortium claims as well. *Mendillo v. Board of Education, supra,* 246 Conn. 485 at n. 20 (observing, "there is nothing in reason to differentiate, as a categorical matter, the emotional loss by a stepchild from that of his or her stepsibling whose natural parent was injured, and there is nothing in reason to differentiate the parent's loss of the joy and comfort of his child from that suffered by the child"). Additionally, the Court noted the vast array of different relationships within the constellation of American families, and expounded its concern that extending the scope of a tortfeasor's third party liability to include family members other than spouses could result in unlimited liability due to the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

Not Reported in A.2d, 2008 WL 3852453 (Conn.Super.), 45 Conn. L. Rptr. 873
**(Cite as: 2008 WL 3852453 (Conn.Super.))**

large number of family relationships likely to be effected if pure rules of foreseeability alone were left to limit liability. *Id.,* at 482 (noting concern of "unlimited liability" due to the large number of family relationships that could be impacted by recognition of parental or filial consortium claims and that imposition of third party liability is granted in rare circumstances). Thus, our Supreme Court has already weighed the competing public policy considerations and found these types of third party liability to be undesirable.

*3 Accordingly, this court joins that majority of other Superior Courts that have similarly concluded that *Mendillo* precludes recognition of a filial consortium claim,[FN4] and grants the defendants' motion to strike.

>   FN4. See, e.g., *Reardon v. Brown,* Superior Court, judicial district of New Haven, Docket No. CV 07 6000950 (April 18, 2008, Robinson, J.); *Thomas v. Trudeau,* Superior Court, judicial district of Windham at Putnam, Docket No. CV 07 5001330 (December 11, 2007, Martin, J.); *Dieresis v. Stamford Health Systems, Inc.,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 06 5001340 (March 6, 2007, Tobin, J.); *Fischer v. Dunn,* Superior Court, judicial district of Waterbury, Docket No. CV 00 0160378 (August 14, 2001, Rogers, J.); *Ward v. Greene,* Superior Court, complex litigation docket at Norwich, Docket No. X04 CV 99 0120118 (March 22, 2001, Koletsky, J.); *Mercede v. Kessler,* Superior Court, judicial district of Stamford-Norwalk at Stamford, docket No. CV 99 0172682 (February 13, 2001, Karazin, J.) (29 Conn. L. Rptr. 246); *Mirjavadi v. Vakilzadeh,* Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. CV 98 0166632 (Nov. 13, 2000, Lewis, J.T.R.) (28 Conn. L. Rptr. 524); *Blanchette v. Desper,* Superior

Court, judicial district of Waterbury, Docket No. CV 98 0144050 (October 19, 1998, Shortall, J.) (23 Conn. L. Rptr. 321).

For the reasons set forth above, the court concludes that Connecticut law does not support a claim of filial consortium, and, therefore, grants the defendants' motion to strike counts five, six, seven, and eight of the plaintiffs' second revised complaint.

Conn.Super.,2008.
Ferrara v. Side Street Grille
Not Reported in A.2d, 2008 WL 3852453 (Conn.Super.), 45 Conn. L. Rptr. 873

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.