### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
-------------------------------------x
SANDRA ELLIOTT, individually and as   :
Administratrix of the estate of       :
Asher Tamara Glace,                   :
                                      :
          Plaintiffs,                 :
                                      :
v.                                    :  CASE NO. 3:09CV00948(AWT)
                                      :
CITY OF HARTFORD; DARYL ROBERTS,      :
individually and in his official      :
capacity as Chief of Police of the    :
City of Hartford Police Department;   :
CHRISTOPHER MORANO, individually and  :
in his official capacity as Chief     :
State's Attorney of the State of      :
Connecticut; and KEVIN KANE,          :
individually and in his official      :
capacity as Chief State's Attorney    :
of the State of Connecticut,          :
                                      :
          Defendants.                 :
-------------------------------------x
```

### RULING ON CITY DEFENDANTS' MOTION TO DISMISS
### SECOND AMENDED COMPLAINT

Sandra Elliott, individually and as the Administratrix of

the estate of Asher Tamara Glace, brings this action against the

City of Hartford (the "City") and Hartford Police Chief Daryl

Roberts ("Chief Roberts") (collectively the "Defendants"), and

former Connecticut Chief State's Attorney Christopher Morano and

current Connecticut Chief State's Attorney Kevin Kane.  The

Defendants have moved to dismiss all claims against them.[1]

Counts I, II and III set forth claims for violations of 42 U.S.C.

§ 1983 against Chief Roberts in his individual capacity; Count

---

[1]Defendants Christopher Morano and Kevin Kane have filed a separate motion to dismiss the claims against them.

VII sets forth a claim for gross negligence against Chief Roberts in his individual capacity; and Count IX sets forth a <u>Monell</u> claim against the City.  Count XI sets forth a claim for supervisory liability, Count XIII sets forth a claim for negligent infliction of emotional distress and Count XV sets forth a claim for loss of affection and society, each against Chief Roberts in his official and individual capacity.  For the reasons set forth below, the Defendants' motion to dismiss is being granted as to Counts I, III, VII, XIII and XV and is being denied as to Counts II, IX and XI.

## I.   FACTUAL BACKGROUND

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." <u>Monsky v. Moraghan</u>, 127 F.3d 243, 244 (2d Cir. 1997).

On February 14, 2005, Asher Tamara Glace ("Glace") witnessed a murder at a night club in Hartford.  At the time of the shooting, the victim fell on Glace and was removed by fellow patrons.  The Hartford Police Department (the "HPD") responded to the scene of the shooting.  No witnesses came forward except Glace.  The HPD took Glace into custody and transported her to The HPD headquarters for further questioning.  Glace was not permitted to drive her motor vehicle to The HPD headquarters, which was one mile away from the scene of the shooting.  Glace

provided The HPD with a detailed statement about the shooting incident, including the names of the victim and the person or persons involved in the shooting.  She was transported back to the scene of the shooting to retrieve her motor vehicle.  Then, Glace was driven home in a HPD squad car and her vehicle was driven home by another individual.

On or about March 15, 2005, the alleged shooter, Anthony Thompson ("Thompson") went into hiding in Jamaica.  Months later, Thompson was captured in Jamaica and extradited to Hartford to face criminal charges.  While Thompson was incarcerated, Thompson's cell mate disclosed to the Defendants that Glace's life was in danger because Glace planned to testify against Thompson.  In addition, at some point after Thompson was incarcerated, Chief Roberts "designated by way of publication that Ms. Glace was the 'chief witness in the upcoming trial of Anthony Thompson' on the department's web page for the entire world to see."  (Second Amended Complaint (Doc. No. 16) ¶ 17.)

On June 16, 2007, approximately two months prior to the commencement of Thompson's trial, Glace was murdered in her family's driveway.  Sandra Elliott ("Elliott"), Glace's mother, discovered her body.

## II.  LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the

complaint and must draw inferences in a light most favorable to
the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).
Although a complaint "does not need detailed factual allegations,
a plaintiff's obligation to provide the 'grounds' of his
'entitle[ment] to relief' requires more than labels and
conclusions, and a formulaic recitation of the elements of a
cause of action will not do." Bell Atlantic Corp. v. Twombly,
550 U.S. 550, 555 (2007), citing Papasan v. Allain, 478 U.S. 265,
286 (1986)(on a motion to dismiss, courts "are not bound to
accept as true a legal conclusion couched as a factual
allegation").  "Nor does a complaint suffice if it tenders naked
assertions devoid of further factual enhancement.  Ashcroft v.
Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at
557).  "Factual allegations must be enough to raise a right to
relief above the speculative level, on the assumption that all
allegations in the complaint are true (even if doubtful in
fact)." Id. (citations omitted).  However, the plaintiff must
plead "only enough facts to state a claim to relief that is
plausible on its face." Id. at 1974.  "The function of a motion
to dismiss is 'merely to assess the legal feasibility of the
complaint, not to assay the weight of the evidence which might be
offered in support thereof.'" Mytych v. May Dept. Store Co., 34
F. Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy
Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774,

-4-

779 (2d Cir. 1984).  "The issue on a motion to dismiss is not
whether the plaintiff will prevail, but whether the plaintiff is
entitled to offer evidence to support his claims." United States
v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990)
(citing Scheuer, 416 U.S. at 232).

    In its review of a motion to dismiss for failure to state a
claim, the court may consider "only the facts alleged in the
pleadings, documents attached as exhibits or incorporated by
reference in the pleadings and matters of which judicial notice
may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12,
15 (2d Cir. 1993).

III. DISCUSSION

    A.    Counts I, II and III: § 1983 Claims Against Chief
          Roberts (Individual Capacity)

    In Counts I, II and III, the plaintiffs bring claims
pursuant to 42 U.S.C. § 1983 for substantive due process
violations on three different bases.  Count I alleges a
substantive due process violation resulting from the failure by
Chief Roberts to take appropriate steps to protect Glace from
known threats, to monitor Thompson and to apprehend Thompson's
coconspirators.  Count II alleges a substantive due process
violation arising from a state-created danger.  Count III alleges
a substantive due process violation arising out of a special
relationship.

**a.   Count I: Failure to Protect in General**

The plaintiffs allege that Chief Roberts violated Glace's right to substantive due process by failing to take appropriate steps to protect Glace from known threats, to monitor Thompson and to apprehend Thompson's coconspirators.  However, except in specific circumstances, which are not the basis for this claim, the "failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."  DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 197 (1989).  Therefore, the motion to dismiss is being granted with respect to this count.

**b.   Count II: State-Created Danger**

The plaintiffs allege that Chief Roberts' "conduct rendered Ms. Glace more vulnerable because he publicly identified her as the 'chief witness' in Anthony Thompson's murder trial, thereby creating the danger to which she eventually succumbed." (Second Amended Complaint ¶ 33.)  The United States Supreme Court has identified two exceptions to the principle that the Due Process Clause does not give rise to a constitutionally protected right of protection from the conduct of private actors.  See DeShaney, 489 U.S. at 200.  One is the state-created danger exception.  The Second Circuit has "read the DeShaney Court's analysis to imply that, though an allegation simply that police officers had failed to act upon reports of past violence would not implicate the

-6-

victim's rights under the Due Process Clause, an allegation that the officers in some way had assisted in <u>creating or increasing</u> the danger to the victim would indeed implicate those rights." <u>Dwares v. City of New York</u>, 985 F.2d 94, 99 (2d Cir. 1993)) (overruled on other grounds by <u>Leatherman v. Tarrant Co. Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164 (1993))(emphasis added).  "This exception requires that the government defendant either be a substantial cause of the danger the witness faces or at least enhance it in a material way." <u>Clarke v. Sweeney</u>, 312 F. Supp. 2d 277, 293 (D. Conn. 2004).

In the present case, the plaintiffs allege that Glace was placed in danger when Chief Roberts publicized on the HPD website that she was the chief witness in the Thompson trial.  Thus, the allegations in this count satisfy the requirement of <u>DeShaney</u> that a defendant have in some way assisted in creating or increasing the danger to the victim.  The Second Amended Complaint includes allegations of affirmative conduct on the part of Chief Roberts and that his affirmative conduct rendered Glace more vulnerable.  Accordingly, the motion to dismiss is being denied with respect to this count.

c.   **Count III: Special Relationship**

The plaintiffs allege that Chief Roberts "established a special relationship with Ms. Glace."  (Second Amended Complaint ¶ 41.)  "The affirmative duty to protect arises not from the

-7-

State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." DeShaney, 489 U.S. at 200.  "The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - - e.g., food, clothing, shelter, medical care, and reasonable safety - - it transgresses the substantive limits on state action set by . . . the Due Process Clause."  Id.

In the present case, the plaintiffs allege that Glace was taken into custody on the day of the incident and required to provide a statement about the incident.  However, the Second Amended Complaint contains no other allegations as to any other point in time or time period at or during which Glace's liberty was so restrained, by Chief Roberts or anyone else, that it rendered her unable to act on her own behalf or to care for herself.  Accordingly, the motion to dismiss is being granted with respect to this count.

**B.   Count IX: Monell Claim Against City of Hartford**

"In [Monell v. Department of Social Services, 436 U.S. 658 (1978),] the [United States] Supreme Court ruled for the first time that municipalities were liable under § 1983 to be sued as

'persons' within the meaning of that statute, when the alleged
unlawful action implemented or was executed pursuant to a
governmental policy or custom." Reynolds v. Giuliani, 506 F.3d
183, 190 (2d Cir. 2007). "A municipality and its supervisory
officials may not be held liable in a § 1983 action for the
conduct of a lower-echelon employee solely on the basis of
respondeat superior. . . . In order to establish the liability
of such defendants in an action under § 1983 for unconstitutional
acts by such employees, a plaintiff must show that the violation
of his constitutional rights resulted from a municipal custom or
policy." Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 122
(2d Cir. 1991)(citation omitted).

The plaintiffs allege that Glace's rights were violated
because the City had a policy, practice, custom and usage of not
properly protecting witnesses who are compelled to testify and
not properly supervising and training its employees to ensure
they protect witnesses who are compelled to testify. (See Second
Amended Complaint ¶¶ 86-88.) The plaintiffs allege further that
Glace's death was the result of the City's policy, practice,
custom and usage. The City argues that actions taken in one
criminal investigation do not rise to the level of a policy or
custom. However, taking the allegations of the Second Amended
Complaint as true and drawing inferences in the light most
favorable to the plaintiffs, the plaintiffs have alleged that a

-9-

violation of Glace's constitutional rights resulted form the
City's custom or policy.  The City's argument as to a single
investigation is more appropriately raised at the summary
judgment stage.  "[M]unicipal liability may be imposed for a
single decision by municipal policymakers under appropriate
circumstances."  <u>Brocuglio v. Proulx</u>, 478 F. Supp. 2d 309, 323
(D. Conn. 2007).  In addition, as discussed above with respect to
the § 1983 substantive due process claim against Chief Roberts
based on the state-created danger exception, the plaintiffs have
sufficiently pled the violation of a constitutional right.

Accordingly, the motion to dismiss is being denied as to
this count.

### C.   Chief Roberts (Official and Individual Capacity)

By bringing suit against Chief Roberts in his official
capacity, the plaintiffs bring suit against the City.  <u>See</u>
<u>Brandon v. Holt</u>, 469 U.S. 464, 472 n.21 (1985)
("[O]fficial-capacity suits generally represent only another way
of pleading an action against an entity of which an officer is an
agent.").  Accordingly, the claims in Counts XI, XIII and XV
against Chief Roberts in his official capacity are treated as
claims against the City.

#### 1.   Counts VII and XIII: Negligence Claims

Chief Roberts contends that the negligence claims are barred
by the statute of limitations.  The statute of limitations

applicable to negligence claims is two years.  <u>See</u> Conn. Gen.
Stat. § 52-584.  The original complaint was filed on June 16,
2009 but the first time any claim, including the negligence
claims, was asserted against Chief Roberts in his individual
capacity was by way of the Second Amended Complaint, which was
filed on June 16, 2010.  Glace was murdered on June 16, 2007,
which was three years prior to Chief Roberts in his individual
capacity being named as a party in this action.  The plaintiffs
contend that the amendments in the Second Amended Complaint
should relate back to June 16, 2009.  However, Chief Roberts in
his individual capacity was not named at all in the original
complaint, and consequently, the plaintiffs can not receive the
benefit of relating back.  <u>See</u> <u>Hamilton v. Town of Hamden</u>, Civil
No. 3:08cv164 (PCD), 2008 WL 4999301, at *10 (D. Conn. Nov. 19,
2008).  Therefore, the negligence claims against Chief Roberts in
his individual capacity are time-barred.  Accordingly, the motion
to dismiss is being granted with respect to the negligence claims
for gross negligence (Count VII) and for negligent infliction of
emotional distress (Count XIII) against Chief Roberts in his
individual capacity.

    With respect to Chief Roberts in his official capacity, the
City was named in the original complaint, which was filed within
the limitations period.  Therefore, the negligence claims are not
time-barred with respect to Chief Roberts in his official

capacity.

With respect to the claim for gross negligence in Count VII against Chief Roberts in his official capacity, the plaintiffs appear to argue that their gross negligence claim is brought pursuant to 42 U.S.C. § 1983: "Defendant Robert's conduct as it pertained to Ms. Glace was grossly negligent and is therefore actionable within the ambit of 42 U.S.C. § 1983 litigation." (Mem. of Law in Opp. to Defs.' Mots. to Dismiss (Doc. No. 29) p. 23.)  "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges."  Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir. 1998).  Although the plaintiffs allege that Chief Roberts acted under color of state law, other than what has been pled in Counts I, II and III, they do not attempt to allege the denial of a federal statutory or constitutional right or privilege.  Therefore, the motion to dismiss is being granted with respect to the gross negligence claim in Count VII against Chief Roberts in his official capacity.

With respect to the claim for negligent infliction of emotional distress in Count XIII against Chief Roberts in his official capacity, Chief Roberts argues that he is entitled to governmental immunity.  By statute, ". . . a political

-12-

subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Conn. Gen. Stat. § 52-577n (2011). The plaintiffs have not alleged a factual basis for any exception to governmental immunity. Therefore, the motion to dismiss is being granted with respect to the claim for negligent infliction of emotional distress in Count XIII against Chief Roberts in his official capacity.

### 2. Count XI: Supervisory Liability

The plaintiffs allege, <u>inter alia</u>, that Chief Roberts, in his individual and official capacity, failed "to take appropriate steps to protect Ms. Glace from the known threats of Anthony Thompson and his coconspirators posed to Ms. Glace, to take appropriate steps to monitor Anthony Thompson and to take appropriate steps to apprehend his coconspirators . . ." (Second Amended Complaint ¶ 101.) Chief Roberts states that it is not clear whether this claim is a negligence claim or a claim under § 1983. The court agrees. However, neither the plaintiffs nor the Defendants address the elements of a claim of supervisory liability. Therefore, the motion to dismiss is being denied with respect to this count against Chief Roberts in his official and individual capacity.

-13-

### 3.   Count XV: Loss of Affection and Society

The Connecticut Supreme Court stated in <u>Mendillo v. Board of Education</u>, 246 Conn. 456 (1998), that "the balance of interest lies in declining to recognize a cause of action for loss of parental consortium by a minor child." <u>Id.</u> at 495-96.  In addition, the Connecticut Supreme Court noted that "there is nothing in reason to differentiate, as a categorical matter . . . the parent's loss of the joy and comfort of his child from that suffered by the child." <u>Id.</u>, at 485 n.20.  The plaintiffs contend that under <u>Clohessy v. Bachelor</u>, 237 Conn. 31 (1996), Elliott's emotional injuries were reasonably foreseeable as required under a claim for negligent infliction of emotional distress by a bystander.  See <u>Clohessy</u>, 237 Conn. at 46 ("Under certain circumstances, . . . a tortfeasor may owe a legal duty to a bystander.  Consequently, a tortfeasor who breaches that duty through negligent conduct may be liable for a bystander's emotional distress proximately caused by that conduct.").

However, the Second Amended Complaint has never alleged a claim for bystander emotional distress, only that as a result of Chief Roberts' failure to act and his deliberate indifference, Elliott suffered the loss of the affection and society of her daughter, Glace.  Therefore, the motion to dismiss is being granted with respect to this count against Chief Roberts in his official and individual capacity.

**IV.   CONCLUSION**

For the reasons set forth above, Defendant Daryl Roberts and the City of Hartford's Motion to Dismiss (Doc. No. 18) is hereby GRANTED in part and DENIED in part.  The motion is being granted with respect to the claims in Counts I, III, VII, XIII and XV against Chief Roberts in his individual capacity and with respect to the claims in Counts XIII and XV against Chief Roberts in his official capacity.  The motion is being denied with respect to the claims in Counts II and XI against Chief Roberts in his individual capacity, with respect to the claims in Count IX against the City and with respect to the claims in Count XI against Chief Roberts in his official capacity.

It is so ordered.

Dated this 17th day of March 2011, at Hartford, Connecticut.


                              _____/s/AWT_____
                                    Alvin W. Thompson
                              United States District Judge