UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------x
SANDRA ELLIOTT, individually and as   :
Administratrix of the estate of       :
Asher Tamara Glace,                   :
                                      :
          Plaintiffs,                 :
                                      :
v.                                    :  CASE NO. 3:09CV00948(AWT)
                                      :
CITY OF HARTFORD; DARYL ROBERTS,      :
individually and in his official      :
capacity as Chief of Police of the    :
City of Hartford Police Department;   :
CHRISTOPHER MORANO, individually and  :
in his official capacity as Chief     :
State's Attorney of the State of      :
Connecticut; and KEVIN KANE,          :
individually and in his official      :
capacity as Chief State's Attorney    :
of the State of Connecticut,          :
                                      :
          Defendants.                 :
-------------------------------------x
```

RULING ON STATE DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT

Sandra Elliott, individually and as the Administratrix of

the estate of Asher Tamara Glace, brings this action against

former Connecticut Chief State's Attorney Christopher Morano and

current Connecticut Chief State's Attorney Kevin Kane in their

official and individual capacities (the "Defendants") and the

City of Hartford and Hartford Police Chief Daryl Roberts.  The

Defendants have moved to dismiss all claims against them.[1]

Counts IV, V and VI set forth claims for violations of 42 U.S.C.

§ 1983; Count VIII sets forth a claim for gross negligence; Count

_____

[1]Defendants City of Hartford and Daryl Roberts have filed a
separate motion to dismiss the claims against them.

X sets forth a claim for supervisory liability; Count XII sets forth a claim for negligent infliction of emotional distress; and Count XIV sets forth a claim for loss of affection and society. For the reasons set forth below, the Defendants' motion to dismiss is being granted as to Counts IV, V, VI, VIII, XII and XIV and is being denied as to Count X.

## I.   FACTUAL BACKGROUND

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997).

On February 14, 2005, Asher Tamara Glace ("Glace") witnessed a murder at a night club in Hartford.  At the time of the shooting, the victim fell on Glace and was removed by fellow patrons.  The Hartford Police Department (the "HPD") responded to the scene of the shooting.  No witnesses came forward except Glace.  The HPD took Glace into custody and transported her to the HPD headquarters for further questioning.  Glace was not permitted to drive her motor vehicle to The HPD headquarters, which was one mile away from the scene of the shooting.  Glace provided The HPD with a detailed statement about the shooting incident, including the names of the victim and the person or persons involved in the shooting.  She was transported back to the scene of the shooting to retrieve her motor vehicle.  Then,

Glace was driven home in a HPD squad car and her vehicle was driven home by another individual.

On or about March 15, 2005, the alleged shooter, Anthony Thompson ("Thompson") went into hiding in Jamaica. Months later, Thompson was captured in Jamaica and extradited to Hartford to face criminal charges. While Thompson was incarcerated, Thompson's cell mate disclosed to the Defendants that Glace's life was in danger because Glace planned to testify against Thompson. In addition, at some point after Thompson was incarcerated, The HPD's Chief of Police, Daryl Roberts ("Roberts"), "designated by way of publication that Ms. Glace was the 'chief witness in the upcoming trial of Anthony Thompson' on the department's web page for the entire world to see." (Second Amended Complaint (Doc. No. 16) ¶ 17.)

On June 16, 2007, approximately two months prior to the commencement of Thompson's trial, Glace was murdered in her family's driveway. Sandra Elliott, Glace's mother, discovered her body.

## II.   LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations,

a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007), citing Papasan v. Allain, 478 U.S. 265, 286 (1986)(on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 1974. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dept. Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States

-4-

v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

III. DISCUSSION

A.   Official Capacity

By bringing suit against the Defendants in their official capacity, the plaintiffs bring suit against the State of Connecticut. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."). The State is not a person for purposes of § 1983. See id. ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). In addition, "[t]he Eleventh Amendment bars federal suits against state officials on the basis of state law." Allen v. Cuomo, 100 F.3d 253, 260 (2d Cir. 1996). Accordingly, the motion to dismiss is granted with respect to all the claims against the Defendants in their official capacity.

-5-

**B.    Individual Capacity**

　　**1.    Counts IV, V and VI: § 1983 Claims**

In Counts IV, V and VI, the plaintiffs bring claims pursuant to 42 U.S.C. § 1983 for substantive due process violations on three different bases.  Count IV alleges a substantive due process violation resulting from failure by the Defendants to conduct a review of Glace's need for witness protection services pursuant to Conn. Gen. Stat. § 54-82t.  Count V alleges a substantive due process violation arising out of a special relationship.  Count VI alleges a substantive due process violation arising from a state-created danger.

　　　　**a.    Count VI: State-Created Danger**

The plaintiffs allege that the Defendants created a danger that resulted in Glace's murder by failing to conduct a review of Glace's need for witness protection services and to make a determination as to the risk of harm Glace faced. (See Second Amended Complaint ¶ 65.)  The United States Supreme Court has identified two exceptions to the principle that the Due Process Clause does not give rise to a constitutionally protected right of protection from the conduct of private actors.  See DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200 (1989).  One is the state-created danger exception.  The Second Circuit has "read the DeShaney Court's analysis to imply that, though an allegation simply that police officers had failed

to act upon reports of past violence would not implicate the victim's rights under the Due Process Clause, an allegation that the officers in some way had assisted in <u>creating or increasing</u> the danger to the victim would indeed implicate those rights." <u>Dwares v. City of New York</u>, 985 F.2d 94, 99 (2d Cir. 1993)) (overruled on other grounds by <u>Leatherman v. Tarrant Co.</u> <u>Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164 (1993))(emphasis added).  "This exception requires that the government defendant either be a substantial cause of the danger the witness faces or at least enhance it in a material way." <u>Clarke v. Sweeney</u>, 312 F. Supp. 2d 277, 293 (D. Conn. 2004).

In the present case, the plaintiffs allege that Glace was placed in danger when the HPD publicized on its website that she was the chief witness in the Thompson trial, and that the Defendants were informed by Thompson's cell mate and had full knowledge that Glace was in danger as a result of their failure to provide Glace with witness protection services.  However, under <u>DeShaney</u>, the Defendants are liable only if they took affirmative steps that created or increased the danger to Glace. The Second Amended Complaint does not set forth such allegations with respect to the Defendants.  Rather, the Second Amended Complaint only sets forth allegations with respect to omissions by the Defendants.  (<u>See</u> Second Amended Complaint ¶ 65.) Accordingly, the motion to dismiss is being granted with respect

to this count.

**b.   Count V: Special Relationship**

The plaintiffs allege that a special relationship was created pursuant to Conn. Gen. Stat. § 54-82t which mandated the Defendants conduct a review of Glace's need for witness protection services and make a determination as to the risk of harm Glace faced.  (See Second Amended Complaint ¶¶ 54-55.)  "The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf."  DeShaney, 489 U.S. at 200. "The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs - - e.g., food, clothing, shelter, medical care, and reasonable safety - - it transgresses the substantive limits on state action set by . . . the Due Process Clause."  Id.

In the present case, the plaintiffs allege that Glace was in custody because she was required to testify at Thompson's trial. However, under DeShaney, the Defendants are liable only if they affirmatively exercised their power such that they restrained Glace in a manner that left her unable to care for herself.  The Second Amended Complaint does not set forth such allegations with

-8-

respect to the Defendants.  Rather, the Second Amended Complaint only sets forth allegations with respect to omissions by the Defendants.  (See Second Amended Complaint ¶¶ 55-56.) Accordingly, the motion to dismiss is being granted with respect to this count.

### c.    Count IV: Conn. Gen. Stat. § 54-82t

The plaintiffs allege that the Defendants violated Glace's right to substantive due process by failing to act pursuant to Conn. Gen. Stat. § 54-82t, which mandated the Defendants conduct a review of Glace's need for witness protection services and make a determination as to the risk of harm Glace faced.  (See Second Amended Complaint ¶¶ 47-49.)

Conn. Gen. Stat. § 54-82t provides that "the prosecutorial official shall review all witnesses to the offense and may identify any witness as a witness at risk of harm. . . . [and] determine whether a witness at risk of harm is critical to a criminal investigation or prosecution. . . . [and] [i]f the witness at risk of harm is determined to be critical . . . the prosecutorial official may (1) certify that the witness receive protective services, or (2) . . . certify that the witness receive protective services including temporary relocation services."  Conn. Gen. Stat. § 54-82t(b) (2011).

The Defendants argue that § 54-82t imposes a duty on them to provide witness protection services only after a referral by the

-9-

official responsible for the underlying prosecution.  They point
to § 54-82t(c), which states that "[w]hen a witness is certified
as provided in subsection (b) of this section, the Chief State's
Attorney shall provide appropriate protective services to such
witness."  Thus, the Defendants argue that, under the plaintiffs'
theory, the local prosecutor, not them, should have been named a
defendant.  However, at this stage of the proceedings, the court
must take the plaintiffs' factual allegations as true, and the
Second Amended Complaint alleges that the Defendants were the
prosecutorial officials who failed to conduct a review and
investigate the risk of harm Glace faced as a witness.

      The Defendants also argue that they have absolute immunity
because determining whether an individual should receive witness
protection services falls within the scope of a prosecutor's
official duties and is a "critical component to the judicial
process."  (Mem. of Law in Supp. of Defs.' Mot. to Dismiss (Doc.
No. 23) ("Supporting Memo.") p. 9.)  In <u>Ying Jing Gan v. City of
New York</u>, 996 F.2d 522 (2d Cir. 1993), the Second Circuit
observed that "generally only (a) the prosecutor's decisions with
regard to whether or not to institute a prosecution and (b) his
performance of his litigation-related duties are given the shield
of absolute immunity. . . . Most other activities are
characterized as administrative or investigative and, thus, merit
less protection."  <u>Gan</u>, 996 F.2d at 530.  In <u>Gan</u>, with respect to

the claim by the plaintiff there that the prosecutor caused the decedent to make face-to-face identifications and thereby increased the risk of harm to him and that the prosecutor failed to provide him with protection, the Second Circuit concluded that "the face-to-face identifications . . . plainly assert conduct of an investigative, not prosecutorial, nature; and the claim that [the prosecutor] failed to protect Ta asserts conduct that plainly is not integral either to a decision of whether or not to institute a prosecution or to the conduct of judicial proceedings." Id. at 531.  Thus, the Defendants' alleged conduct here does not qualify for absolute immunity.

However,

[t]he privilege of qualified immunity generally shields government officials from liability for damages on account of their performance of discretionary official functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." . . .  The availability of the defense generally turns on the "'objective legal reasonableness'" of the allegedly unlawful official action, "assessed in light of the legal rules that were 'clearly established' at the time it was taken." . . . To determine whether a particular right was clearly established at the time defendants acted, a court should consider:

(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Gan, 996 F.2d at 531-32 (citations omitted).  In the present

case, the plaintiffs have not identified any clearly established federal right that was violated by virtue of the failure by a prosecutor to perform his duty under § 54-82t. Accordingly, the Defendants are entitled to qualified immunity with respect to this count, and the motion to dismiss is being granted.

### 2.    Counts VIII and XII: Negligence Claims

The Defendants argue that the gross negligence and negligent infliction of emotional distress claims are barred by Conn. Gen. Stat. § 4-165, which provides a limited immunity to state officials and employees who are sued in their individual capacity. Section 4-165 provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165 (2011). See In re State Police Litigation, 888 F. Supp. 1235, 1252 (D. Conn. 1995)("[T]he exhaustion requirement set forth in section 4-165 does not apply to intentional acts that are wanton, reckless or malicious.").

The plaintiffs argue that their claims "are not barred by . . . § 4-165 because the Defendants, Morano and Kane's conduct [was] reckless." (Mem. of Law in Opp. to Defs.' Mots. to Dismiss (Doc. No. 29) p. 19.) The plaintiffs also argue that "[t]he Defendants conduct rose to the level of reckless and is therefore actionable." (Id.) However, the plaintiffs do not plead

recklessness in the Second Amended Complaint.  Therefore, the plaintiffs have failed to allege a claim that is not barred by § 4-165.  Accordingly, the motion to dismiss is being granted with respect to these counts.[2]

### 3.   Count X: Supervisory Liability

The plaintiffs allege that the Defendants failed to conduct a review pursuant to § 54-82t into Glace's need for protective services and the risks she faced as a witness critical to the criminal investigation or prosecution.  The Defendants contend that the decision to place someone in witness protection is a decision "closely tied" to the local prosecutor.  (Supporting Memo. p. 10.)  However, the court must accept the plaintiffs' factual allegations as true.  Moreover, in this claim, the plaintiffs allege that the Defendants failed to train and supervise their employees with respect to the proper protocols, procedures and techniques in connection with providing protective services to witnesses involved in criminal investigations or prosecutions.

-----

[2]The negligence claims would also be time-barred.  The statute of limitations applicable to negligence claims is two years.  See Conn. Gen. Stat. § 52-584.  The original complaint was filed on June 16, 2009 and did not name the Defendants in their individual capacities. The negligence claims against the Defendants were first pled in the Second Amended Complaint which was filed on June 16, 2010.  Glace was murdered on June 16, 2007, which was three years prior to the Defendants in their individual capacities first being named as parties in this action, and the amendments in the Second Amended Complaint adding the claims against the Defendants in their individual capacities do not relate back.  See Hamilton v. Town of Hamden, Civil No. 3:08cv164 (PCD), 2008 WL 4999301, at *10 (D. Conn. Nov. 19, 2008).

It is unclear whether the plaintiffs are seeking to bring a common law claim or a claim under § 1983.  The Defendants contend that their motion to dismiss should be granted because they are not liable under a theory of respondeat superior.  The plaintiffs correctly note that their claim in this count of the Second Amended Complaint is not based on such a theory.  Neither side addresses the elements of a claim of supervisory liability. Accordingly, the motion to dismiss is being denied with respect to this count.

### 4.  Count XIV: Loss of Affection and Society

The Connecticut Supreme Court stated in <u>Mendillo v. Board of Education</u>, 246 Conn. 456 (1998), that "the balance of interest lies in declining to recognize a cause of action for loss of parental consortium by a minor child." <u>Id.</u> at 495-96.  In addition, the Connecticut Supreme Court noted that "there is nothing in reason to differentiate, as a categorical matter . . . the parent's loss of the joy and comfort of his child from that suffered by the child." <u>Id.</u>, at 485 n.20.  Accordingly, the plaintiffs' allegations are legally insufficient to state a claim, and the motion to dismiss is being granted with respect to this count.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss Second Amended Complaint (Doc. No. 22) is hereby GRANTED

in part and DENIED in part.  The motion is being granted with respect to all claims against defendants Christopher Morano and Kevin Kane in their official capacity and with respect to the claims in Counts IV, V, VI, VIII, XII and XIV against defendants Christopher Morano and Kevin Kane in their individual capacity. The motion is being denied with respect to the claim in Count X against defendants Christopher Moran and Kevin Kane in their individual capacity.

It is so ordered.

Dated this 17th day of March 2011, at Hartford, Connecticut.

_____
/s/AWT
Alvin W. Thompson
United States District Judge