UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SANDRA ELLIOTT, ADMINISTRATOR :     CIVIL ACTION NO.3:09CV948 (AWT)
:
        v.                             :
:
CITY OF HARTFORD POLICE         :
DEPARTMENT, ET AL.               :        JANUARY 30, 2012

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO QUASH AND FOR A
PROTECTIVE ORDER**

       Pursuant to Fed. R. Civ. P. 45, Defendant Chief State's Attorneys Kevin Kane

and Christopher Morano, as well as non-party deponents David Zagaja and James

Thomas, move to quash subpoenas served on them, local law enforcement officers and

other likely witnesses involved in the prosecution of two pending criminal matters.  In

support of this motion, the defendants assert that Assistant State's Attorneys David

Zagaja and Richard Rubino are prosecuting two individuals charged with the murder of

the plaintiff's decedent.  Since this action relates to the manner in which the Hartford

Police Department and the Office of the Chief State's Attorney provided protection for

the decedent, who had witnessed another murder committed by one or more of the

assailants currently being prosecuted, it is readily apparent that the depositions that are

the subject of this motion would, by their very nature and purpose, invade the

prosecutors'  thoughts, mental impressions and understanding of the criminal case

currently pending in Hartford Superior Court.  In order to protect the privileges of the

prosecutor, the testimony of the witnesses and the integrity of the underlying criminal

case, the motion to quash should be granted and a protective order should issue to effectuate the order quashing the aforementioned deposition subpoenas.

## I. FACTS

In this case, the plaintiff estate brings suit against the Hartford Police Department, Hartford Police Chief Daryl Roberts, the Office of the Chief State's Attorney, the Current Chief State's Attorney individually and his immediate predecessor in office, alleging that each defendant agency and/or agency head failed to provide protection for the decedent after she witnessed a murder.  The decedent, Asher Glace did in fact witness a murder that occurred at the Cleveland Café on February 14, 2005, and herself was murdered on June 16, 2007.  Two individuals, Anthony Thompson and Earl Thompson, have been charged with the murder of Ms. Glace.  See Plaintiff's Complaint at ¶¶ 6, 14 (Document no. 16).  As shown in the attached affidavit of David Zagaja, an Senior Assistant State's Attorney assigned to the Hartford Judicial District, criminal charges against the Thompsons arising from the murder of Ms. Glace remain pending, and are awaiting assignment for trial.  Zagaja Affid. at ¶ 5.

In separate rulings dated March 17, 2011, this court dismissed most of the claims raised by plaintiff in her operative complaint.  With respect to the State defendants, the court left only a supervisory liability claim against current Chief State's Attorney Kevin Kane and former Chief State's Attorney Christopher Morano.  As characterized by the court in its ruling on the motion for summary judgment, the court must "accept plaintiff's factual allegations as true" that the decision to place an individual in witness protection is "closely tied" to the local prosecutor, and therefore the two Chief State's Attorneys, named in their individual capacities, remain in the case until filing of a motion for

summary judgment, presumably with the plaintiff conducting discovery to prove this factual allegation.  See Ruling on Motion to Dismiss at 13-14 (document no. 31). Similarly, the court significantly narrowed the claims against the municipal defendants, leaving only a claim that the Police Chief disclosed the identity of the decedent in a manner which created some duty on his part to provide her with protection.  See Ruling on City of Hartford's Motion to Dismiss, document no. 32.

Shortly after issuing its ruling on the motions to dismiss, the court ordered the parties to participate in a status conference to prepare a scheduling order.  Thereafter, on April 11, 2011 the parties filed a joint scheduling order (document no. 35).  In the proposed order, the parties agreed that counsel for the state and the municipal defendants would serve draft motions for summary judgment on the plaintiff, who would then conduct discovery on the issues raised therein.  See Id. at ¶¶ 1-2.  The joint filing also represented that, "[b]ecause there is a pending criminal prosecution that is material to this civil action, except as set forth above, all discovery and other proceedings in this case shall be stayed until further order of the court."  Id. at p. 1.  The court approved the Joint Scheduling Order on April 13, 2011.

After several months of inactivity, plaintiff's counsel began, in October and November 2011, to subpoena persons to depositions.  Rather than follow the constraints of the joint scheduling order, plaintiff has clearly focused his discovery on matters that are the subject of the pending criminal cases.  Plaintiff's counsel has noticed more than eighteen depositions, most of who are not parties and represent the police officers, witnesses and prosecutors involved in the underlying criminal cases. The list of deponents includes:  Kevin Kane and Christopher Morano, former Hartford

State's Attorney James Thomas, prosecutor David Zagaja, police officers Jerry Bilbo, Robert Davis, John Beaulieu, Michael Sheldon and Michael Lopez,  inmate witnesses Everton Gardner Stephen Nelson, civilian witness Paulette Sheldon, and Department of Correction intelligence officer Christlyn Semmelrock, and Hartford Police Daryl Roberts.

In an effort to resolve disputes over plaintiff's discovery efforts, and to protect the ongoing criminal cases from unnecessary interference, the parties have met with the court's parajudicial officer, James Hawkins, on four separate occasions in an effort to reach a stipulation of facts.  In addition to submitting proposed stipulations of fact that are immaterial to the issues raised in the proposed summary judgment motions, plaintiff's counsel has focused his efforts on facts that are material to the pending criminal matters, as well as his futile efforts to file an amended complaint to add additional claims against prosecutors and police officers who are not parties.  Among other reasons, these proposed amendments are meritless given that the statute of limitations for such claims ran in June 2010.  See *Lounsbury v. Jeffries*, 23 F. 3d 131, 134 (2d Cir. 1994)(under Connecticut law, claims arising under 42 U.S.C. § 1983 are subject to a three year statute of limitation as established by Conn. Gen. Stat. § 52-577).

In light of the pending scheduling order, and to further protect the underlying criminal prosecutions from undue interference, the state defendants move to quash the subpoenas for Kevin Kane, Christopher Morano, James Thomas, Jerry Bilbo, Robert Davis, Christlyn Semmelrock, John Beaulieu, Michael Sheldon, Stephen Nelson, Everton Gardner, Paulette Sheldon, Michael Lopez and David Zagaja.  In addition, the deposition of Hartford Police Chief Daryl Roberts should be limited in scope to allow

testimony regarding his public comments and/or internet postings regarding Ms. Glace, but any testimony seeking to elicit his knowledge or understanding of the crimes committed by Anthony and/or Earl Thompson should be shielded from disclosure while the criminal cases remain open.  Critically, the state defendants do not object to the plaintiff's efforts depose a representative of the Chief State's Attorney's Office to discuss the process for providing witness protection services or the degree of supervision the Office of the Chief State's Attorney provides supervision to the judicial district state's attorneys in the provision of those services.  Plaintiff's counsel not only knows the identity of this person, but also has noticed her deposition.

## II.  STANDARD OF REVIEW

The decision on whether or not to grant a motion to quash a subpoena for the testimony of a witness, as well as for the production of documents in his possession, rests within the sound discretion of the trial court.  *See Gulley v. Orr*, 905 F.2d 1383 (10th Cir. 1990).  The court does not abuse this discretion when it quashes a subpoena which seeks irrelevant or immaterial information. *U.S. v. Masat*, 948 F.2d 923 (5th Cir.), *rehearing denied*, 952 F.2d 402 (1991).  Determinations of relevance and materiality are entrusted to the sound discretion of the trial judge.  *United States v. Caming*, 968 F.2d 232, 238 (2d Cir. 1992), *cert. denied*, ___ U.S. ___, 113 S.Ct. 416, 121 L.Ed.2d 339 (1992), *citing, United States v. Ebner*, 782 F.2d 1120, 1126 (2d Cir. 1986); *United States v. Sindona*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981).  The court may quash, modify or otherwise exercise its supervisory discretion over subpoenas to prevent wrongs before they occur. *In Re Grand Jury Proceedings*, 707 F.Supp. 1207 (D. Hawaii 1989).

In ruling on a motion to quash, the court is not limited to the remedy of quashing the subpoena, but may instead issue an appropriate protective order to remove its objectionable features. *Ghandi v. Police Dept. of City of Detroit*, 74 F.R.D. 115, 124 (6th Cir. 1984).  Litigants may raise the same objections to a subpoena as they might to discovery. *See Jackson v. Brinker*, 147 F.R.D. 189 (S.D. Ind. 1993).  Thus, the Court has broad authority to distinguish reasonable and productive uses of the discovery procedures from abusive invocations of such procedures and to design protective orders to curtail the latter. *Doe v. District of Columbia*, 697 F.2d 1115, 225 U.S. App. D.C. 225 (1983).

### III. <u>ARGUMENT</u>

Connecticut courts have long recognized that information and documents in the possession of law enforcement agencies and the State's Attorneys gathered in the course of their official duties are protected by the qualified law enforcement privilege. *See, e.g., State v. Colon*, 272 Conn. 106, 263, 864 A.2d 666, 764 (2004) (materials sought by the defendant, namely, documents, letters, and reports regarding any ongoing investigation by the office of the chief state's attorney, were shielded from disclosure under the law enforcement privilege); *Seebeck v. State,* 246 Conn. 514, 546, 717 A.2d 1161 (1998) (Information disclosed to a State's Attorney for the purpose of enabling him to perform the duties of the office is privileged upon grounds of public policy, and an adverse party has no right to demand its production).  "The reason for this privilege is to aid the State's Attorney and the police in conducting investigations by encouraging people to disclose information without fear or embarrassment." *Id.,* quoting *State v. Zimnaruk,* 128 Conn. 124, 127, 20 A.2d 613 (1941).

In addition to our own courts, other courts throughout this nation have recognized that certain records within the possession of law enforcement officials are subject to a qualified privilege against discovery in civil litigation both during and after criminal investigations. *See, e.g., In re Marriage of Daniels,* 240 Ill. App. 3d 314, 607 N.E.2d 1255, 1264, 180 Ill. Dec. 742 (Ill. App. Ct. 1992) (Considering, but not extending privilege in civil discovery when ongoing police investigation); *State of Iowa, ex rel. Shanahan v. Iowa Dist. CT for Iowa County,* 356 N.W.2d 523 (Iowa 1984) (applying in civil discovery when ongoing police investigation); *City of Tampa v. Harold,* 352 So. 2d 944, 946 (Fla. Dist. Ct. App. 1977). These courts have expressed a rather uniform purpose in motivating the adoption of the privilege which is, in essence, "[t]o prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation ...." *In re Marriage of Daniels, supra,* 607 N.E.2d at 1264.

The U.S. Court of Appeals for the Second Circuit also recently opined on the parameters of the common law privilege in the case of *Dinler v. City of New York,* 607 F.3d 923, 940-42 (2nd Cir. 2010). There, the court was called upon to examine the circumstances in which the so-called "law enforcement privilege" must yield to the needs of a party seeking discovery in a civil action. The court clarified (1) the legal standard for evaluating whether the law enforcement privilege should give way to a party's need for discovery, (2) the factors to be weighed in applying that standard, (3) whether there is a presumption against disclosure, and (4) if there is such a

presumption, the extent of the showing that a party must make to overcome it. *Dinler,* 607 F.3d at 940.

  In analyzing the issues, the *Dinler* court recognized that

> The law enforcement privilege is related to, and indeed an outgrowth of, the executive privilege long recognized at common law. The law enforcement privilege "shares with those [privileges] typically labeled 'executive' a justification rooted in the need to minimize disclosure of documents whose revelation might impair the necessary functioning of a department of the executive branch." *Black v. Sheraton Corp. of Am., 564 F.2d 531, 541-42, 184 U.S. App. D.C. 46 (D.C. Cir. 1977).* The interests that underlie the privilege are "rooted in common sense as well as common law" and, like other common law privileges, the law enforcement privilege is subject to "pragmatic adjustment to the needs of sound government." *Id. at 542.*

*Dinler,* 607 F.3d at 941-42. The court acknowledged that the law enforcement privilege was "grounded in well-established doctrine" and is "widely recognized by the federal courts. *Id., Dinler,* at 942.

  The *Dinler* court opined that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the discovery in question. *Id., Dinler,* 607 F.3d at 944, *citing, In re Sealed Case, 856* F.2d 268, 271-72, 272 U.S. App. D.C. 314 (D.C. Cir. 1988). The court went on to state that

> To meet this burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect. Such protected information includes information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation. An investigation, however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public.

*Id.* (internal quotations, brackets and citations omitted).

*Dinler* recognized that the law enforcement privilege is qualified, not absolute. *Id.*, 607 F.3d at 945. *Dinler* also recognized that, once a court determines that the privilege applies, the public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information. *Id. See also, See Smith v. Yalanis,* 2003 Conn. Super. LEXIS 3636 (Superior Court, Judicial District of New Britain, December 12, 2003). However, *Dinler* concluded that, in the course of applying the balancing test, "there ought to be a pretty strong presumption against lifting the privilege." [1] *Id, citing Dellwood Farms v. Cargill,* 128 F.3d 1122, 1125 (7th Cir. 1997). To rebut that presumption, the party seeking disclosure must show (1) that its suit is "non-frivolous and brought in good faith," (2) that the information sought is not available through other discovery or from other sources, and (3) that the information sought is important to the party's case." *Id.* (internal quotations and citations omitted). Moreover, the requesting party must demonstrate a *compelling* need for the information sought. *Id.* (Internal quotations and citations omitted, emphasis in original). Even so, the court reiterated that merely establishing a compelling need was, by itself, insufficient to overcome the presumption of privilege. Rather, disclosure is required only if that compelling need outweighs the public interest in non-disclosure. *Id.*, 607 F.3d at 945.

Thus, according to *Dinler,* access to confidential records and information is left to the discretion of the trial court which is in the best position to be able to assess the probative value of such evidence as it relates to the particular case before it, and to

---

[1]   The *Dinler* court reached this conclusion because the heart of its concern over the lifting of the privilege was with the principle that control of criminal investigations is the prerogative of the executive branch, subject to judicial intervention only to protect rights.  *Dinler,* 607 F.3d at 945, n. 22 (internal quotations and citations omitted).

weigh that value against the interest in confidentiality of the records.  *Dinler*, 607 F.3d at

949.  *See also, State v. Harris*, 227 Conn. 751, 762, 631 A.2d 309 (1993) (internal

citations and quotations omitted).

    Here, it is readily apparent that plaintiff's discovery is focused on the merits of

claims that have been dismissed by this court and that are at the heart of the pending

criminal cases against the murderers of Ms. Glace.  As established in the attached

affidavit of David Zagaja, the prosecutor in those cases, it is clear that the witnesses

that are the subject of this motion represent the very law enforcement officers,

government and lay witnesses whose testimony will be essential to obtain convictions of

Anthony and Earl Thompson.  Without disclosing the prosecutors' thoughts and mental

impressions, it Is apparent that plaintiff's counsel seeks to delve into the facts and

circumstances surrounding the murder of Ms. Glace, rather than narrowly focus on the

open legal claims outlined by the court in its ruling on the defendants' motions to

dismiss, namely, whether there is a supervisory relationship between the Chief State's

Attorney and the several judicial district state's attorneys, and perhaps more specifically,

whether there is any supervisory relationship as it relates to proving protective services

to witnesses.  In this regard, it is important to note that the state defendants have

outlined their legal arguments on this point in their draft summary judgment motion, and

do not object to the plaintiff taking the deposition of a representative of the Chief State's

Attorney's office who is familiar with the process of providing witness protection in

pending criminal matters.  Whether the reason is rooted in common sense, comity or

the common law, *Dinler* and the authorities cited above provide strong support for the

quashing of plaintiff's deposition subpoenas as discussed herein.

In sum, the scope and nature of the plaintiff's discovery is unprecedented in that it includes the taking of depositions of prosecutors and their witnesses in pending criminal prosecutions.  Indeed, defendants' counsel could find no authority to support a claim that such discovery has been permitted in other proceedings.  Rather than work within the parameters set by the court in the operative scheduling order, plaintiff's counsel is now focused on matters that are the subject of the pending prosecutions.  Accordingly, the defendants' motion to quash should be granted.

## CONCLUSION

For all of the foregoing reasons, the undersigned defendant respectfully requests this Court to quash the subpoenas for the depositions of Kevin Kane, Christopher Morano, James Thomas, Jerry Bilbo, Robert Davis, Christlyn Semmelrock, John Beaulieu, Michael Sheldon, Stephen Nelson, Everton Gardner, Paulette Sheldon, Michael Lopez and David Zagaja.  In addition, the deposition of Hartford Police Chief Daryl Roberts should be limited in scope to allow testimony regarding his public comments and/or internet postings regarding Ms. Glace, but any testimony seeking to elicit his knowledge or understanding of the crimes committed by Anthony and/or Earl Thompson should be shielded from disclosure while the criminal cases remain open.

DEFENDANT:
STATE OF CONNECTICUT
OFFICE OF THE STATE'S ATTORNEY

GEORGE JEPSEN
ATTORNEY GENERAL


BY:      /s/ Terrence M. O'Neill
        Terrence M. O'Neill
        Assistant Attorney General
        Federal Bar No. ct10835
        110 Sherman Street
        Hartford, CT  06105
        Tel.: (860) 808-5450
        Fax: (860) 808-5591
        terrence.oneill@ct.gov


## CERTIFICATION

I hereby certify that on January 30, 2012, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

         /s/ Terrence M. O'Neill
        Terrence M. O'Neill
        Assistant Attorney General
        Federal Bar No. ct10835
        110 Sherman Street
        Hartford, CT  06105
        Tel.: (860) 808-5450
        Fax: (860) 808-5591
        terrence.oneill@ct.gov

### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SANDRA ELLIOTT, ADMINISTRATOR | : | CIVIL ACTION NO.3:09CV948 (AWT) |
| | : | |
| v. | : | |
| | : | |
| CITY OF HARTFORD POLICE | : | |
| DEPARTMENT, ET AL. | : | JANUARY 30, 2012 |

### <u>AFFIDAVIT OF DAVID ZAGAJA</u>

I, David Zagaja, having been duly sworn, do hereby depose and say that:

1. I am over the age of eighteen and understand the obligations of an oath.

2. Since   November 1996, I have been employed by the State of Connecticut, Division of Criminal Justice, and assigned to the Office of the Hartford State's Attorney.  I am currently a Senior Assistant State's Attorney.  As such, I am familiar with the facts stated herein.

3. At all relevant times my immediate supervisor has been the State's Attorney for the Hartford Judicial District.  Each State's Attorney for each judicial district operates separately and independently of each other and the Chief State's Attorney.

4. Asher Glace was murdered on or about June 16, 2007.  Shortly thereafter, I was assigned to prosecute Anthony Thompson and Earl Thompson, who have been charged with her murder.

5. As of the filing of this affidavit, the criminal cases against Anthony Thompson and Earl Thompson remain pending in Hartford Superior Court.  Both cases are awaiting assignment for trial.

6. Because these criminal matters remain pending, it would be severely prejudicial to these prosecutions to allow depositions of the prosecutors, police officers and witnesses who will

participate in those proceedings.   Specifically, these depositions would disclose the thoughts, mental impressions and trial strategy of the prosecutors and the substance of the witness testimony that would be elicited at the criminal trials.  Such disclosure is, in my experience, unprecedented and unjustified.

7.   Without disclosing any trial strategy, the following deponents identified by plaintiff's counsel have knowledge that, if disclosed at this time, would be materially prejudicial to the pending criminal matters:  Kevin Kane, Christopher Morano, James Thomas, Jerry Bilbo, Robert Davis, Christlyn Semmelrock, John Beaulieu, Michael Sheldon, Stephen Nelson, Everton Gardner, Paulette Sheldon, Michael Lopez and myself.  In addition, the deposition of Hartford Police Chief Daryl Roberts should be limited in scope to allow testimony regarding his public comments and/or internet postings regarding Ms. Glace, but any testimony seeking to elicit his knowledge or understanding of the crimes committed by Anthony and/or Earl Thompson should be shielded from disclosure while the criminal cases remain open.

8.  Attached hereto are printouts from the Connecticut Judicial Branch website showing the docket numbers and pending status of the criminal matters involving Anthony Thompson and Earl Thompson.

David Zagaja
Senior Assistant State's Attorney

Subscribed and sworn to before me this 30th day of January, 2012.

Terrence M. O'Neill

  

### State of Connecticut
## Judicial Branch

Monday, January 30, 2012 Docket Search by Court Location

Monday, January 30, 2012 Docket Search by Defendant

Pending Cases Search by Defendant

Pending Cases Search by Docket Number

Convictions Search by Defendant

Convictions Search by Docket Number

GA Court Phone Numbers

JD Court Phone Numbers

Home

## Pending Case Detail

### *Data as of the Previous Business Day*

Defendant Information

| | | | |
|---|---|---|---|
| Last, First: | THOMPSON ANTHONY | Represented By: | |
| Birth Year: | 1980 | Times on the Docket: | 10 |

Docket Information

| | | | |
|---|---|---|---|
| Docket No: | HHD -CR08-0622267-T | Arresting Agency: | LOCAL POLICE HARTFORD |
| Companion: | | | |
| Program: | | Arrest Date: | 6/25/2008 |
| Court: | Hartford JD | Bond Amount: | $5,000,000 (This case only) |
| Miscellaneous: | | Bond Type: | Set |
| | | | (Not Released From Custody) |
| Activity: | On the Trial List, To Be Scheduled | Trial List Date: | 11/18/2008 10:00 AM |

Current Charges

| Statute | Description | Class | Type | Occ | Offense Date | Plea | Verdict Finding |
|---|---|---|---|---|---|---|---|
| 53a-54a | ACCESSORY TO MURDER | A | Felony | 1 | 6/16/2007 | | |
| 53a-54a | CONSPIRACY TO COMMIT MURDER | B | Felony | 1 | 6/16/2007 | | |

| Back |
|---|

Register for Notification in CT SAVIN

Attorneys | Case Look-up | Courts | Directories | Educational Resources | E-Services | FAQ's | Juror Information | Media | Opinions | Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2012, State of Connecticut Judicial Branch




## State of Connecticut
# Judicial Branch

Monday, January 30,
2012 Docket Search
by Court Location

Monday, January 30,
2012 Docket Search
by Defendant

Pending Cases
Search by Defendant

Pending Cases
Search by Docket
Number

Convictions Search
by Defendant

Convictions Search
by Docket Number

GA Court Phone
Numbers

JD Court Phone
Numbers

Home

## Pending Case Detail

### *Data as of the Previous Business Day*

Defendant Information

| | | | |
|---|---|---|---|
| **Last, First:** | THOMPSON EARL | **Represented By:** | 402116 GM BEAUDOIN |
| **Birth Year:** | 1977 | **Times on the Docket:** | 12 |

Docket Information

| | | | |
|---|---|---|---|
| **Docket No:** | HHD -CR08-0622268-T | **Arresting Agency:** | LOCAL POLICE HARTFORD |
| **Companion:** | | | |
| **Program:** | | **Arrest Date:** | 6/25/2008 |
| **Court:** | Hartford JD | **Bond Amount:** | $5,000,000 (This case only) |
| **Miscellaneous:** | | **Bond Type:** | Set |
| | | | (Not Released From Custody) |
| **Activity:** | On the Trial List, To Be Scheduled | **Trial List Date:** | 10/14/2009 10:00 AM |

Current Charges

| Statute | Description | Class | Type | Occ | Offense Date | Plea | Verdict Finding |
|---|---|---|---|---|---|---|---|
| 53a-54a | ACCESSORY TO MURDER | A | Felony | 1 | 6/16/2007 | Not Guilty | |
| 53a-54a | CONSPIRACY TO COMMIT MURDER | B | Felony | 1 | 6/16/2007 | Not Guilty | |

| Back |
|---|

Register for Notification in CT SAVIN

Attorneys | Case Look-up | Courts | Directories | Educational Resources | E-Services | FAQ's | Juror Information | Media | Opinions |
Opportunities | Self-Help | Home

Common Legal Terms | Contact Us | Site Map | Website Policies

Copyright © 2012, State of Connecticut Judicial Branch