UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2012 FEB 24  P 4: 54

US DISTRICT COURT
HARTFORD CT

| | |
|---|---|
| Sandra Elliott, individually and as the Administratrix of the Estate of Asher Tamara Glace<br><br>Plaintiffs<br><br>vs.<br><br>CITY OF HARTFORD, DARYL ROBERTS, Individually and in his official capacity as Chief of Police of the City of Hartford Police Department; CHRISTOPHER MORANO Individually and in his official capacity as Chief State's Attorney of the State of Connecticut; and KEVIN KANE, individually and in his official capacity as Chief State's Attorney of the State of Connecticut,<br><br>Defendants. | CIVIL NO.: 309-cv-00948 (AWT)<br><br>PLAINTIFFS' OBJECTION TO MOTION TO QUASH AND PROTECTIVE ORDER<br><br>February 24, 2012 |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTION TO DEFENDANTS' MOTION TO QUASH AND PROTECTIVE ORDER

Defense contention is that discovery should be limited to the two remaining claims in the plaintiffs initial complaint, which are the supervisory liability claim against the state's states attorneys, Christopher Morano and Kevin Kane, and the duty Daryl Roberts, the City of Hartford chief of police, had to provide Ms. Glace protection after he had disclose to the public her importance to the prosecution's case. As a result, the state-defendants is of the mindset that the only deposition they will approve is one in which the Office of the Chief State's Attorney

1

provides information about the process of witness protection and the degree of supervision it provides supervision to the judicial district state's attorneys in the provision of those services. While the City-Defendants will only agree to a deposition of Chief Daryl Roberts, which is limited in scope to testimony regarding his public comments and/or internet postings regarding Ms. Glace.

The Plaintiff asserts that the deposition request of the following individuals:

1. Existing Parties Kevin Kane and Christopher Morano.

2. State's Attorney James E. Thomas who was the presiding State's Attorney for the Hartford Judicial District at the time of the Cleveland cafe murder on 2/14/2005, and retired immediately after Asher Glace's murder on June 16, 2007.

3. Tracey Kelly, Assistant State Attorney and Coordinator of the State of Connecticut Witnesses Protection Program.

4. Ms. Tracey Kelly's supervisor. This person was in charge of the Violent Crimes Bureau which oversaw the state of Connecticut Witness Protection Program-this person's testimony bears on the custom, procedures, and practices that were in place at the time Ms. Glace was made to provide a written statement, and where her personal information were placed in the Application for Arrest Warrant and signed off by prosecutor John Fahey and officers from The Hartford Police Department which was later published to Anthony Thompson in 2005; and the training provided

to law enforcement personnel with respect to the Mandates of the Connecticut Witness Protection Law.

5. **Proposed new parties**, State Attorneys John Fahey (retired), David Zagaja, and Richard Rubino were responsible for the prosecution of Anthony Thompson with respect to the Cleveland Café murder at various points. All three individuals were responsible for making/referring/conducting reviews to witnesses at risk of harm from serious felonies with respect to the Cleveland murder case. **[Emphasis Added]**

6. **Proposed new parties**, Hartford Police Department (hereinafter, HPD) Detectives Jerry Bilbo (retired) and Michael Sheldon were the investigator on the Cleveland Café murder case and were responsible for making/referring/conducting reviews to witnesses at risk of harm from serious felonies with respect to the Cleveland murder case. Both have already testified with respect to Anthony Thompson's role in the Cleveland Café murder trial. **[Emphasis Added]**

7. State of Connecticut Department of Corrections inmates Everton Gardner and Stephen Nelson who already **testified under oath** that they provided information to law enforcement officials warning that Anthony Thompson intended to kill Ms. Glace. They also met with these law enforcement officials well before Ms. Glace was murdered. **[Emphasis Added]**

8. HPD Detectives Robert Davis, and Michael Lopez; Town of Farmington Detective John Beaulieu. All to testify as to their role in the investigation of the Cleveland Café murder, and the witnesses therein.

9. Civilian witness Paulette Sheldon who testified at the Anthony Thompson trial for the Cleveland café murder.

10. Christlynn Semmelrock from the State of Connecticut Department of Corrections Intel Unit. She has already testified that Anthony Thompson and Stephen Nelson were present at Walker Correctional Institute at the time Mr. Nelson testified to at the trial of Anthony Thompson, and her transcripts are already in the Plaintiffs possession,

11. **Proposed new party,** Chief of Police for The City of Hartford, Patrick Harnett (retired). Chief Harnett was responsible for safeguarding persons and property at the time of the Cleveland Café murder, and he subsequently retired in late 2006. This party/witnesses has already provided testimony on January 4, 2012, and this testimony is already in the hands of the Plaintiffs.

12. City of Hartford Chief of Police Daryl Roberts critically relates to the Plaintiffs' remaining claim in her initial complaint. Therefore, it is the plaintiff's contention that deposition of the above listed individual should be allowed for the limited purpose of

       determining if the defendant knew Ms. Glace's life was at risk and if so what steps were taken to protect her.

Therefore, it is the plaintiffs' contention that deposition of the above listed individuals will not venture into information already known, but the Defendants has termed–privileged. Given the fact that there is already an abundance of evidence, both testimonial and documentary in the possession of the Plaintiffs, the Defendant's motion to quash, and their motion for protective order is tantamount to their advancing "a solution that is seeking a problem to solve." The information they are attempting to protect is already in the public domain, and Plaintiffs' have discovered this information without the assistance of the Defendants. This state-of-affairs begs the inevitable question: What information relating to their providing witness protection to Ms. Glace as a witness at risk of harm to a serious felony are they protecting? Here, even Anthony Thompson's appeal to the Connecticut Supreme Court has already been heard.

  The Plaintiffs' seek to learn if the defendants conducted the mandated review of Ms. Glace as a witness at risk to a serious felony, and whether the defendants offered her protection from harm, specifically as it pertains to the Cleveland Café murder, and the role the Defendants played in heightening the risk of harm against Ms. Glace. The Defendants have already aided in Ms. Glace's ambush murder and as such, the Plaintiffs' only interest is to see that prosecution brings justice to those cases. Plaintiffs have no motive or desire to try the case against the Thompson brothers in a civil context.

## STANDARD OF REVIEW

The decision on whether or not to grant a motion to quash a subpoena for the testimony of a witness, as well as for the production of documents in his possession, rest within the sound discretion of the trial court. See Gulley v. Orr, 905 F.2d 1383 (10th Cir. 1990).

## LAW

[Connecticut] " Practice Book § 13-2 provides in relevant part: In any civil action ... where the judicial authority finds it reasonably probable that evidence outside the record will be required, a party may obtain in accordance with the provisions of this chapter discovery of information or disclosure ... whether the discovery or disclosure relates to the claim or defense of the party seeking discovery.... Discovery shall be permitted if the disclosure sought would be of assistance in the prosecution or defense of the action...." (Internal quotation marks omitted.) *West Hartford v. Murtha Cullina, LLP*, 85 Conn.App. 15, 27, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004).

Practice Book § 13-5 provides in relevant part: "Upon motion by a party from whom discovery is sought, and for good cause shown, the judicial authority may make any order which justice requires to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following . . . that the discovery may be had only on specified terms . . . ." "[T]he [trial] court's inherent authority to issue protective orders is embodied in Practice Book § 13-5 . . . ." (Internal quotation marks omitted.) *Pea-tie v. Wal-Mart*

*Stores, Inc.*, 112 Conn. App. 8, 14, 961 A.2d 1016 (2009). "The use of protective orders and the extent of discovery is within the discretion of the trial judge. *Id.*, 15.

Connecticut courts have long recognized that information and documents in the possession of law enforcement agencies and the State's Attorneys gathered in the course of their official duties are protected by the qualified law enforcement privilege. See e.g., state v. Colon, 272 Conn. 106, 263, 864 A.2d 666, 764 (2004).

The U.S. Court of Appeals for the Second Circuit recently reviewed the parameters of the qualified law enforcement privilege. Dinler v. City of New York, 607 F.3d 923, 940-42 (2nd Cir. 2010). There the court was examining the circumstances in which the qualified law enforcement privilege must yield to the needs of a party seeking discovery in a civil action.

The Dinler court opined that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the discovery in question, Id., Dinler, 607 F.3d at 944, citing , In re Sealed Case, 856 F.2d 268, 271-72, 272 U.S. App. D.C. 314 (D.C. Cir. 1988). The court went on to state that

> To meet this burden, the party asserting the law enforcement
> privilege must show that the documents contain information that
> the law enforcement privilege
> is intended to protect. Such protected information includes
> information pertaining to law enforcement techniques and
> procedures, information that would undermine the confidentiality
> of sources, information
> that would endanger witness and law enforcement personnel or the
> privacy of individuals involved in an investigation, and
> information that would otherwise interfere with an investigation.
> An investigation,

7

> however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigation may be seriously impaired if certain information is revealed to the public. Id.
> (internal quotations and citations omitted)

The Dinler case involved plaintiffs who were arrested as protesters, and other persons who were arrested, detained, and fingerprinted after demonstrating at the 2004 Republican National Convention in New York City (hereinafter RNC). The [plaintiffs] brought suit under 42 U.S.C. § 1983 and state law claiming that their arrest and treatment at the hands of the New York Police Department (hereinafter NYPD) violated the United States Constitution and New York Law. Id. at 928. The RNC was held in New York in the wake of the terrorist attacks which occurred in New York in 2001. During pretrial discovery, the Plaintiffs brought a motion to compel roughly 1800 pages of confidential reports created by undercover NYPD officers who were investigating potential security threats in the months before the RNC . . . . The City of New York opposed the motion to compel by asserting, among other things, that the documents were protected from disclosure by the law enforcement privilege.

Dinler recognized that the law enforcement privilege is qualified, not absolute. Id., 607 F.3rd at 945, Dinler also recognized that, once a court determines that the privilege applies, the public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privilege information. Id. See also Smith v. Yalanis, 2003 Conn. Super. LEXIS 3636 (Superior Court, Judicial District of New Britain, December 12, 2003). However, Dinler concluded that, in the course of applying the balancing test, "there ought to be a pretty strong presumption against lifting the privilege." Id, citing Delwood Farms v. Cargill, 128 F.3d 1122,

8

1125 (7th Cir. 1997). To rebut the presumption the party seeking disclosure must show (1) that its suit is non-frivolous and brought in good faith," (2) that the information sought is not available through other discovery or from other sources, and (3) that the information sought is important to the party's case. Id. (internal quotations and citations omitted). Moreover, the requesting party must demonstrate a compelling need for the information sought Id (internal quotations and citations omitted emphasis in original.) Even so, the court reiterated that merely establishing a compelling need was, by itself, insufficient to overcome the presumption of privilege. Rather, disclosure is required only if that compelling need outweighs the public interest in nondisclosure. Id. 607 F.3d at 945.

Thus, according to Dinler, access to confidential records and information is left to the discretion of the trial court which is in the best position to be able to access the probative value of such evidence as it relates to the particular case before it, and to weigh that value against the interest in confidentiality of the records. Dinler, 607 F.3d at 949, See also State v. Harris, 227 Conn.751, 762, 631 A.2d 309 (1993) (internal quotations and citations omitted)

## **ARGUMENT**

The information the Hartford police and the Connecticut State's Attorneys' Office gathered during the course of their investigation of O'Neil Robinson's murder is not protected by a qualified law enforcement privilege. All the documents used in the prosecution of Anthony Thompson with respect to the murder of Mr. Robinson is already in the public domain and are now in the possession of the Plaintiffs, despite the fact the Defendants abrogated their duty o provide initial disclosures pursuant to F.R.C.P 26.

Alternatively, if the court finds qualified law enforcement privilege, the circumstances exist whereby the defendants' qualified law enforcement privilege must yield to the needs of the Plaintiffs' need for discovery in this action.

The defendants cannot meet their burden of showing that the privilege applies to the discovery the Plaintiff s seek. First the scope of the Plaintiffs' deposition does not bear on the unresolved issues as to who is responsible for killing Ms. Glace, it is simply to discover if the Defendant provided protection to Ms. Glace as a witness at risk of harm to a serious felony in accordance with state law.

Secondly, an overwhelming majority of the evidence Defendants' terms as qualifiedly privileged information is already in the Plaintiffs' and the public domain as a result of Anthony Thompson trial, appeal, and the Asher Glace's murder probable cause hearing .

Thirdly, the information is not protected due to the fact that the information the plaintiffs' seek does not pertain to the Hartford Police or the States Attorney's office "law enforcement techniques and procedures. Unlike the Dinler case, the Plaintiffs' do not seek information that pertain to potential security threats, , and there is no need to expose law enforcement procedures and techniques outside of the named and proposed new parties conduct as they pertain to witness protection that was offered to Ms. Glace.

Fourthly, Unlike the Dinler case, the information the Plaintiffs seek is not protected information as it does not undermine any confidential sources. The Plaintiff knows this as a result of the information that is already ion their possession and the public domain. If there are confidential informants, the Plaintiffs have no interest in them.

Fifth, the information sought by the Plaintiffs would not endanger any witness and/or law enforcement personnel or their privacy. Again, this is not a relevant element in the defense's contention that the information sought is protected under the limited law enforcement privilege.

Finally, as to the element of "Interfering with an investigation," which is the catch all element the defendants are relying on for the court to find that there is protected information which deserves coverage under the law enforcement privilege. The facts simply do not support such a finding. Again, the Plaintiffs are not seeking information relating to who is responsible for the murder of Ms. Glace, they are simply seeking to determine if the Defendants conducted a review of Ms. Glace's risk of harm as a witness to a serious felony, and if so, what steps were

taken to protect her. The Defendants have not specifically articulated how such a limited scope of discovery would interfere with the pending criminal cases.

Alternatively, if the court determines that such privilege exist in this case, the court I required to make a further determination as to whether the Plaintiffs' need for the privilege information, outweighs the public interest in nondisclosure, with a strong presumption against lifting the privilege. Unlike the Dinler case, the presumption against lifting a privilege is underwhelmed by the fact that the suit is non-frivolous and brought in good faith.

The Defendants position is untenable and cannot stand on all fours. The Defendants argue that there should be a categorical bar from Plaintiffs deposing any of the previously mentioned parties, new parties and witnesses. The Defendants rationale is laid bare by the fact they are concurrently opposing the Plaintiffs' motion to add new parties, all the while, under circumstances where the Defendants have abrogated their duty to comply with F.R.C.P. 26 mandates to provide initial disclosures. Detective Bilbo is retired and as far as the Plaintiffs are concerned he did not have any role in the investigation of Anthony Thompson or his brother slaughtering Ms. Glace. The same reasoning applies to Detective Sheldon, Prosecutors Zagaja, Rubino, and Fahey (retired over one year before Ms. Glace was murdered in 2007). The Defendants motion to quash the subpoenas, as well as their opposition to Plaintiffs motion to amend their complaint serves only to deny the Plaintiffs the justice they seek. Here, the Plaintiffs' contention is that the Defendants aided in Ms. Glace's untimely demise, and after that event was affected, they now seek to thwart the Plaintiffs search for justice. No amount of sincerity with respect to prosecution of the Thompson brothers will resurrect Ms. Glace after she

was made to provide a written statement containing her name, address and date of birth the Defendants knew would have made its' way to Anthony Thompson's hands. Having Ms. Glace provide this information was not enough for the defendant, because approximately two weeks later, they placed the same information in an "Application for Arrest Warrant" dated February 22, 2005. If Anthony Thompson had not seen Ms. Glace's personal in formation in the "personal statement' she was made to produce on February 14, 2005, the defendants made absolutely certain he got the information a second time.

The Plaintiffs does not desire to litigate the murder trials of the Thompson brothers. None of the information sought by the Plaintiffs bears upon the trials of Anthony Thompson and Earl Thompson. From this standpoint, and contrary to the Defendant's assertion, the information sought by the Plaintiffs does not constitute an invasion of the prosecutor's thoughts, their mental impressions, and understandings of the criminal cases currently pending in Hartford Superior Court. As a result of the lack of protection the Defendants' accorded Ms. Glace, she was ambushed, and slaughtered by Anthony Thompson and his confederates, while she was performing her civic duty to cooperate with the police in murder trial. The information sought by the plaintiff is not available through other discovery or from other sources, and that the information sought goes to he essence of the Plaintiff's case which is determinative of the Defendants' conduct, as they pertain to the specific events surrounding the Cleveland Café murder, and the Defendants deliberate indifference in protecting Ms. Glace as a "witness at risk of harm arising from a serious felony."

.

## **CONCLUSION**

For the foregoing reasons, The Defendants motion to quash and protective order should be denied.

BY Richard C. Gordon, Esq.

_____
/s/ Richard C. Gordon, Esq.
Counsel for Plaintiffs
697 Blue Hills Avenue
Hartford, CT 06112
(860) 534-0547
(860) 656-6889 FAX
Juris No.: 27288

## CERTIFICATION OF MAILING

I certify that a copy of the foregoing documents was mailed to the Defendants on February 25, 2012.


BY Richard C. Gordon, Esq.


---

/s/Richard C. Gordon, Esq.
Counsel for Plaintiffs
697 Blue Hills Avenue
Hartford, CT 06112
(860) 534-0547
(860) 656-6889 FAX
Juris No.: 27288

15