## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SANDRA ELLIOTT, ADMINISTRATOR | : | CIVIL NO. 3:09CV948 (AWT) |
| | : | |
| v. | : | |
| | : | |
| CITY OF HARTFORD POLICE | : | |
| DEPARTMENT, ET AL. | : | MARCH 8, 2012 |

### STATE DEFENDANTS' REPLY MEMORANDUM
### IN SUPPORT OF ITS MOTION TO QUASH

The State Defendants, Chief State's Attorneys Christopher Morano and Kevin Kane, hereby reply to the Plaintiff's Objection to the Defendants' Motion to Quash and Protective Order, filed February 24, 2012.

**I.     FACTS**

This case arises from the untimely death of Ms. Asher Glace.  Ms. Glace witnessed a murder at the Cleveland Café on February 14, 2005 and identified Anthony Thompson as the perpetrator.   On June 16, 2007, Ms. Glace was murdered.   Anthony and Earl Thompson ("Thompson brothers") stand accused of murdering Ms. Glace in order to prevent her from testifying in the matter of State v. Anthony Thompson.

The current complaint before the court alleges that conduct or lack thereof by the defendants, the City of Hartford, former Hartford Police Chief Daryl Roberts, Chief State's Attorneys Christopher Morano and Kevin Kane, fueled the death of Ms. Glace.  There are only three claims pending, a substantive due process claim, a Monell claim and a supervisory liability claim.  The supervisory liability claim is the only claim against the State Defendants.

In furtherance of discovery, the Plaintiff sought to depose a plethora of witnesses who were in some way connected to the underlying investigation and murder at the Cleveland Café,

the subsequent investigation and murder of Asher Glace or outside the scope of the claims pending.  In an attempt to eliminate the need to depose all of the witnesses, the parties met on several occasions to execute a stipulation.   Unfortunately, the parties could not reach an agreement.

As a result, the State filed a Motion to Quash and for a Protective Order along with a Memorandum in Support of said motion to preclude the depositions of witnesses that could potentially compromise the investigation and criminal cases pending against the Thompson brothers.   Attached to its Memorandum in Support of its motion was an affidavit from Senior Assistant State's Attorney David Zagaja, the prosecutor assigned to the criminal cases against Anthony and Earl Thompson (Aff. ¶ 4).  He states, "As of the filing of this affidavit, the criminal cases against Anthony Thompson and Earl Thompson remain pending in Hartford Superior Court.  Both cases are awaiting assignment for trial." (Aff. ¶ 5).   In addition, the affidavit also revealed that "it would be severely prejudicial to these prosecutions to allow depositions of the prosecutors, police officers and witnesses who will participate in those proceedings." (Aff. ¶ 6)

In response to the State Defendants' Motion to Quash and for a Protective Order the Plaintiff filed an Objection and Memorandum in Support of its Objection, which affirmed its previous request and identified the following 18 individuals it sought to depose: Former Chief State's Attorney Christopher Morano, Chief State's Attorney Kevin Kane, Hartford State's Attorney James E. Thomas, Assistant State's Attorney and Coordinator of the Witness Protection Program Tracey Kelly, an unidentified supervisor of the Violent Crimes Bureau of the Chief State's Attorney's Office, Former Assistant State's Attorney John Fahey, Senior Assistant State's Attorney David Zagaja, Assistant State's Attorney Richard Rubino, Former Hartford

Police Department Detective Jerry Bilbo, Hartford Police Department Detective Michael Sheldon, Inmate Everton Gardner, Inmate Stephen Nelson, Hartford Police Department Detective Robert Davis, Hartford Police Department Detective Michael Lopez, Farmington Police Department Detective John Beaulieu, Paulette Sheldon, Department of Correction employee Christlynn Semmelrock, and former Hartford Police Chief Daryl Roberts.

However, the Plaintiff fails to understand or value the importance of preserving the testimony provided by these witnesses. It is clear from the Plaintiff's reply that it holds the Defendants responsible. "The Defendants have already aided in Ms. Glace's ambush murder, and as such, the Plaintiffs' only interest is to see that prosecution brings justice to those cases." (Memo Pg. 5). It is also apparent that giving the Thompson defendants a preview of trial testimony would not only compromise but potentially jeopardize the State's criminal cases for the murder of Asher Glace. In addition, allowing the procedures and techniques utilized by the police, the Witness Protection Program and the prosecutors to be canvassed in a court forum would compromise the safety or potential witnesses and the integrity of our criminal process.

## II. STANDARD OF REVIEW

The trial court has within its discretion the authority to determine whether or not to grant a motion to quash a subpoena for the testimony of a witness, as well as for the production of documents in his possession. *See Gulley v. Orr*, 905 F.2d 1383 (10th Cir. 1990). The court does not abuse this discretion when it quashes a subpoena which seeks irrelevant or immaterial information. *U.S. v. Masat*, 948 F.2d 923 (5th Cir.), *rehearing denied*, 952 F.2d 402 (1991).

It is well established that determinations of relevance and materiality are entrusted to the sound discretion of the trial judge. *United States v. Caming*, 968 F.2d 232, 238 (2d Cir. 1992),

*cert. denied*, ___ U.S. ___, 113 S.Ct. 416, 121 L.Ed.2d 339 (1992), *citing, United States v. Ebner*, 782 F.2d 1120, 1126 (2d Cir. 1986); *United States v. Sindona*, 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981).  In addition, the court may quash, modify or otherwise exercise its supervisory discretion over subpoenas to prevent wrongs before they occur.  *In Re Grand Jury Proceedings*, 707 F.Supp. 1207 (D. Hawaii 1989).

When addressing a motion to quash, the court is not limited to the remedy of quashing the subpoena, but may instead issue an appropriate protective order to remove its objectionable features.  *Ghandi v. Police Dept. of City of Detroit*, 74 F.R.D. 115, 124 (6th Cir. 1984).  Litigants may raise the same objections to a subpoena as they might to discovery.  *See Jackson v. Brinker*, 147 F.R.D. 189 (S.D. Ind. 1993).  Consequently, the Court has broad authority to distinguish reasonable and productive uses of the discovery procedures from abusive invocations of such procedures and to design protective orders to curtail the latter.  *Doe v. District of Columbia*, 697 F.2d 1115, 225 U.S. App. D.C. 225 (1983).

## III.    ARGUMENT

The Defendants contend that the depositions sought by the Plaintiff are within the scope of the law enforcement privilege.  It is undisputed that the Thompson brothers stand accused of murdering Asher Glace.  Yet, opposing counsel seeks to compel the testimony of key witnesses and prosecutors, directly involved in the Cleveland Café murder investigation and prosecution, as well as, the Asher Glace murder investigation and prosecution, in this civil matter.  Although, plaintiff repeatedly makes references that the testimony and information sought is within the public domain, that it mere speculation.  Plaintiff also acknowledges "that deposition of the above listed individuals will not venture into information already known" (Memo Pg. 5 ¶ 1),

4

demonstrative of counsel's determination to pierce the veil of protection afforded to law enforcement investigations.  Furthermore, opposing counsel does recognize that this information is protected by the law enforcement privilege.

Connecticut courts have long recognized that information and documents in the possession of law enforcement agencies and the State's Attorneys gathered in the course of their official duties are protected by the qualified law enforcement privilege.  *See, e.g., State v. Colon*, 272 Conn. 106, 263, 864 A.2d 666, 764 (2004) (materials sought by the defendant, namely, documents, letters, and reports regarding any ongoing investigation by the office of the chief state's attorney, were shielded from disclosure under the law enforcement privilege); *Seebeck v. State,* 246 Conn. 514, 546, 717 A.2d 1161 (1998) (Information disclosed to a State's Attorney for the purpose of enabling him to perform the duties of the office is privileged upon grounds of public policy, and an adverse party has no right to demand its production).  "The reason for this privilege is to aid the State's Attorney and the police in conducting investigations by encouraging people to disclose information without fear or embarrassment."  *Id.,* quoting *State v. Zimnaruk,* 128 Conn. 124, 127, 20 A.2d 613 (1941).

The U.S. Court of Appeals for the Second Circuit outlined the parameters of the common law privilege in the case of *Dinler v. City of New York,* 607 F.3d 923, 940-42 (2nd Cir. 2010).  In *Dinler*, the court examined the circumstances in which the so-called "law enforcement privilege" must yield to the needs of a party seeking discovery in a civil action.  The court clarified (1) the legal standard for evaluating whether the law enforcement privilege should give way to a party's need for discovery, (2) the factors to be weighed in applying that standard, (3) whether there is a

presumption against disclosure, and (4) if there is such a presumption, the extent of the showing that a party must make to overcome it. *Dinler,* 607 F.3d at 940.

The *Dinler* court opined that the party asserting the law enforcement privilege bears the burden of showing that the privilege applies to the discovery in question. *Id., Dinler,* 607 F.3d at 944, *citing*, *In re Sealed Case, 856* F.2d 268, 271-72, 272 U.S. App. D.C. 314 (D.C. Cir. 1988). The court went on to state that

> To meet this burden, the party asserting the law enforcement privilege must show that the documents contain information that the law enforcement privilege is intended to protect. Such protected information includes information pertaining to law enforcement techniques and procedures, information that would undermine the confidentiality of sources, information that would endanger witness and law enforcement personnel or the privacy of individuals involved in an investigation, and information that would otherwise interfere with an investigation. An investigation, however, need not be ongoing for the law enforcement privilege to apply as the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information is revealed to the public.

*Id.* (internal quotations, brackets and citations omitted).

When applying the factors outlined in *Dinler* to this case it is apparent that the law enforcement privilege is applicable, thus precluding the Plaintiff from deposing the witnesses identified.

The information sought by plaintiff is exactly what the law enforcement privilege is intended to protect.  In its Memorandum filed in Opposition to the State's Motion, the Plaintiff specified that it sought to identify customs, procedures, and practices utilized by the Connecticut Witness Protection Program and training it provided to law enforcement personnel (Memo Pg. 2 ¶ 4).   Clearly the customs, procedures and training utilized by the Connecticut Witness

Protection Program are in line with the information outlined by the court in *Dinler*. Furthermore, the safety of potential witnesses would be endangered if counsel were allowed to elicit testimony. When referencing the State's Attorneys Fahey, Zagaja and Rubino Plaintiff claimed that they were responsible for making/referring/conducting reviews to witnesses and as such their deposition was necessary (Memo Pg. 3 ¶ 5). This is an attempt to elicit information about the investigative approach taken concerning both the underlying murder at the Cleveland Café and the subsequent murder of Asher Glace. In addition, opposing counsel is well aware of the fact that State's Attorneys Zagaja and Rubino are assigned to the criminal cases against the Thompson brothers. Plaintiff identified Former Hartford Police Department Detective Jerry Bilbo and Hartford Police Department Detective Michael Sheldon as responsible for making/referring/conducting reviews to witnesses (Memo Pg. 3 ¶ 6), which obviously is part of a police investigation and vital components of the prosecution's case against the Thompson brothers. Everton Gardner, Stephen Nelson, Paulette Sheldon, and Christlynn Semmelrock, are potential witnesses in the Asher Glace murder trial, and as such testimony in this matter would compromise the State's criminal case, since the Thompson defendants would have a preview of potential testimony.

Pursuant to *Dinler* the State is not required to show that an investigation is ongoing merely that present or potential investigations may be compromised. With this in mind the State is opposed to having police Detectives Robert Davis, Michael Lopez, and John Beaulieu testify about their role in the investigation of the Cleveland Café murder and the witnesses therein, which is what the Plaintiff seeks (Memo Pg. 4 ¶ 8). If counsel were to elicit testimony about steps taken by these witnesses it could create vulnerability with regard to future police

investigations.   In addition, testimony by these individuals does not appear to have any correlation with the claims that are pending.

The *Dinler* court recognized that the law enforcement privilege is qualified, not absolute. *Id.,* 607 F.3d at 945.  *Dinler* also recognized that, once a court determines that the privilege applies, the public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information.  *Id.  See also, See Smith v. Yalanis,* 2003 Conn. Super. LEXIS 3636 (Superior Court, Judicial District of New Britain, December 12, 2003).

However, *Dinler* concluded that, in the course of applying the balancing test, "there ought to be a pretty strong presumption against lifting the privilege." [1] *Id, citing Dellwood Farms v. Cargill,* 128 F.3d 1122, 1125 (7th Cir. 1997).  To rebut that presumption, the party seeking disclosure must show (1) that its suit is "non-frivolous and brought in good faith," (2) that the information sought is not available through other discovery or from other sources, and (3) that the information sought is important to the party's case."  *Id.* (internal quotations and citations omitted).  Moreover, the requesting party must demonstrate a *compelling* need for the information sought.  *Id.* (Internal quotations and citations omitted, emphasis in original).  Even so, the court reiterated that merely establishing a compelling need was, by itself, insufficient to overcome the presumption of privilege.  Rather, disclosure is required only if that compelling need outweighs the public interest in non-disclosure.  *Id.,* 607 F.3d at 945.

The Plaintiff's Memorandum also lists Current Chief State's Attorney Kevin Kane (Memo Pg. 2 ¶ 1), Former Chief State's Attorney Christopher Morano (Memo Pg. 2 ¶ 1) and

---

[1]   The *Dinler* court reached this conclusion because the heart of its concern over the lifting of the privilege was with the principle that control of criminal investigations is the prerogative of the executive branch, subject to judicial intervention only to protect rights.  *Dinler,* 607 F.3d at 945, n. 22 (internal quotations and citations omitted).

Former Hartford State's Attorney James E. Thomas (Memo Pg. 3 ¶ 6) yet counsel fails to articulate or specify why the testimony is needed.  Defendants assert that  testimony by these witnesses relate directly to procedures and techniques used by a law enforcement agency. Without specificity by the Plaintiff, the Defendants argue that disclosure by these witnesses would also compromise the ability of a law enforcement agency to conduct future investigations by revealing the analytical and strategic approach taken when prosecuting murder cases.

It is worth noting that the State is willing to produce witnesses in furtherance of the plaintiff's discovery.  An individual from the Chief State's Attorney's Office can testify about the Witness Protection Program in a general sense.  However, this would be contingent on a deposition notice served on the Chief State's Attorney's Office itself, which would allow them to designate the most knowledgeable person and ensure efficiency.  Although defendants are opposed to revealing the customs, procedures and training utilized, we are cognizable of the claims pending and agreeable to advancing plaintiff's discovery.   In addition, we also are amenable to the deposition of former Hartford Police Chief Daryl Roberts.  Taking into account the claims pending, his testimony should be limited to what was posted on the Hartford Police Department website or what information was disclosed publicly.  Any information beyond that, such as his knowledge of facts and circumstances surrounding the murder at the Cleveland Café, would clearly be outside of the perimeters of the complaint and also within the ambit of the law enforcement privilege as outlined above.

According to *Dinler,* access to confidential records is left to the discretion of the trial court which is in the best position to be able to assess the probative value of such evidence as it relates to the particular case before it, and to weigh that value against the interest in

confidentiality of the records. *Dinler,* 607 F.3d at 949. *See also, State v. Harris,* 227 Conn. 751, 762, 631 A.2d 309 (1993) (internal citations and quotations omitted). Consequently, this court has the authority to determine that the probative value is not outweighed by the interest in confidentiality of records.

## IV.    CONCLUSION

Wherefore, the State Defendants, Kevin Kane and Christopher Morano hereby object to the Plaintiff's deposition of Former Chief State's Attorney Christopher Morano, Chief State's Attorney Kevin Kane, Hartford State's Attorney James E. Thomas, Assistant State's Attorney and Coordinator of the Witness Protection Program Tracey Kelly, an unidentified supervisor of the Violent Crimes Bureau of the Chief State's Attorney's Office, Former Assistant State's Attorney John Fahey, Senior Assistant State's Attorney David Zagaja, Assistant State's Attorney Richard Rubino, Former Hartford Police Department Detective Jerry Bilbo,  Hartford Police Department Detective Michael Sheldon,  Inmate Everton Gardner,  Inmate Stephen Nelson, Hartford Police Department Detective Robert Davis,  Hartford Police Department Detective Michael Lopez,  Farmington Police Department Detective John Beaulieu,  Paulette Sheldon, Department of Corrections employee Christlynn Semmelrock,  and  Former Hartford Police Chief Daryl Roberts.

DEFENDANTS
STATE OF CONNECTICUT
OFFICE OF THE STATE'S ATTORNEY

GEORGE JEPSEN
ATTORNEY GENERAL


BY:_____/s/_____
Zenobia Graham-Days
Assistant Attorney General
Federal Bar No. ct28802
110 Sherman Street
Hartford, CT 06105
Telephone No.:  (860) 808-5450
Fax No. (860) 808-5591
Email:  zenobia.graham-days@ct.gov


## CERTIFICATION

I hereby certify that on March 8, 2012 a copy of the foregoing was filed electronically. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.


_____/s/_____
Zenobia Graham-Days
Assistant Attorney General