UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------------x
SANDRA ELLIOTT, individually and    :
as the Administratrix of the        :
estate of Asher Tamara Glace,       :
                                    :
              Plaintiff,            :
                                    :
v.                                  :   CASE NO. 3:09CV00948(AWT)
                                    :
PATRICK HARNETT, individually and   :
in his Official Capacity as         :
Chief of Police for the City of     :
Hartford, CITY OF HARTFORD, The     :
State of Connecticut's Chief        :
State Attorneys CHRISTOPHER         :
MORANO and KEVIN KANE,              :
individually and in their           :
Official Capacities,[1]             :
                                    :
              Defendants.           :
------------------------------------x
```

**RULING ON CITY DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT**

Sandra Elliott, individually and as Administratrix of the estate of Asher Tamara Glace, brought this action against the City of Hartford ("the City"), former City of Hartford Police Chiefs Patrick Harnett ("Chief Harnett") and Daryl Roberts ("Chief Roberts"), former Connecticut Chief State's Attorney Christopher Morano, and Chief State's Attorney Kevin Kane.[2]

On October 31, 2012, the City and Chief Harnett filed a motion for summary judgment. The court granted the motion as to

---

[1] At times, different individuals and entities have been listed in the complaint as defendants. The caption in this ruling reflects the defendants named in the body of the operative complaint.
[2] The court granted the motion for summary judgment as to Morano and Kane on September 30, 2013.

-1-

Counts I, II and III of the operative complaint.[3] The court denied the motion, without prejudice, as to Count V of the operative complaint because it was unclear whether the plaintiff was bringing the claim against Chief Harnett in both his individual and official capacities. The court construed Count V of the operative complaint as bringing both individual capacity and official capacity claims against Chief Harnett, but because the defendants had construed the operative complaint as containing a claim against Chief Harnett in only his individual capacity, and therefore had not briefed the official capacity claim, the court denied the motion for summary judgment as to Count V without prejudice.

The City and Chief Harnett have moved for summary judgment as to Count V of the operative complaint. For the reasons set forth below, the defendants' motion for summary judgment is being granted.

I.   FACTUAL BACKGROUND

   **Connecticut's Witness Protection Program**

In Connecticut, The Leroy Brown, Jr. and Karen Clarke Witness Protection Program is the "program of providing protective services to witnesses" at risk of harm. Conn. Gen. Stat. § 54-82s. "In any investigation or prosecution of a

---

[3] Additionally, the court noted that Chief Roberts was no longer a defendant in the action because there were no claims against him in the operative complaint, even though he was listed in the caption.

serious felony offense, the prosecutorial official shall review all witnesses to the offense and may identify any witness as a witness at risk of harm." Conn. Gen. Stat. § 54-82t(b). A "'[w]itness at risk of harm means a witness who, as a result of cooperating in an investigation or prosecution of a serious felony offense, has been, or is reasonably likely to be, intimidated, harassed, threatened, retaliated against or subjected to physical violence." Conn. Gen. Stat. § 54-82t(a)(2).

In addition to the statute establishing the witness protection program, there is a witness protection policy, which is provided to the state's attorney's offices. The policy describes the witness protection program and outlines the procedures for certifying an individual into the program. Local law enforcement officers are the first line of contact with an individual who may require protection because they alert the state attorney's office of the potential need. The state's attorney for each judicial district, not the Chief State's Attorney, decides who is eligible for witness protection services within his or her judicial district. See Conn. Gen. Stat. 54-82t(b). In making the determination, the state's attorney does not confer with the witness protection unit or the Chief State's Attorney.

"Upon such identification, the prosecutorial official shall then determine whether a witness at risk of harm is critical to a criminal investigation or prosecution." Id. "If the witness at risk of harm is determined to be critical to such investigation or prosecution, the prosecutorial official may (1) certify that the witness receive protection services, or (2) if the prosecutorial official finds a compelling need to temporarily relocate the witness, certify that the witness receive protective services including temporary relocation services." Id. "In determining whether a witness should receive protective services, the prosecutorial official shall give special consideration to a witness who is a child, elderly or handicapped or otherwise more at risk of being intimidated, harassed, threatened, retaliated against or subjected to physical violence or who is a witness in a case involving organized crime, gang activities or drug trafficking or involving a high degree of risk to the witness." Id.

The witness protection unit becomes involved in the process after an individual is certified into the program by a state's attorney. The witness protection unit does not receive referrals from local law enforcement officers, only from the state's attorneys. Once the witness protection unit receives the state's attorney's referral, the unit determines the type of services needed to keep the witness safe. Protective services

provided to a witness in the program may include armed protection, escort, marked or unmarked surveillance, temporary physical relocation to an alternate residence, housing expenses, transportation, storage of personal possessions, basic living expenses and other services as needed and approved by the chief state's attorney.  See Conn. Gen. Stat. § 82t(d)(1)-(6).

The witness protection unit provides training sessions to local and state officials and provides informative materials, not classes or training sessions, to the various police departments for use in their training sessions.  The Chief State's Attorney does not provide training on the witness protection program.

**Asher Glace**

On February 14, 2005, Asher Glace ("Glace") witnessed the murder of O'Neil Robinson ("Robinson") at the Cleveland Café, a night club in Hartford.  Robinson was shot to death.  At the time of the shooting, Glace was eight to ten feet away from the gun, and the victim fell on Glace and was removed by fellow patrons.  The Hartford Police Department responded to the scene of the shooting.  Initially, no witnesses came forward except Glace.  The Hartford Police Department took Glace into custody and transported her to police headquarters for further questioning.  Glace provided Detectives Jerry Bilbo and Michael Sheldon a voluntary statement about the shooting, including the

names of the victim and of the persons involved in the shooting. She also positively identified the shooter as Anthony Thompson ("Thompson") and stated that she had known him for two and a half years.

The information contained in Glace's statement was not available to the public, and the Hartford Police Department did not turn over any documents to Thompson's legal team.  The Hartford Police Department provided Glace's statement to the prosecutors but the Department did not release that statement to the defense in the trial concerning the February 14, 2005 murder.

The investigation into the February 14, 2005 murder was handled by detectives in the Hartford Police Department.  At the time, Chief Harnett was the chief of police.  He did not handle the investigation.  Chief Harnett resigned in July 2006.  Chief Roberts became the chief of police in July 2006.

On or about March 15, 2005, Thompson went into hiding in Jamaica.  Thompson was arrested in Jamaica and extradited to Connecticut around May 2005.  While Thompson was incarcerated, two inmates disclosed to the Hartford Police Department and the state's attorney's office that Glace's life was in danger because Glace planned to testify against Thompson at his upcoming criminal trial.  On June 16, 2007, approximately two

-6-

months prior to the commencement of the trial, Glace was shot and killed in her driveway.

At no time prior to Glace's death did Chief Harnett or Chief Roberts identify Glace on any City of Hartford website, including the Hartford Police Department website.

## II. LEGAL STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(a) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir.

1975).  It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge."  Anderson, 477 U.S. at 255.  Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution."  Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact.  Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248 (internal quotation marks omitted).  A material fact is one that would "affect the outcome of the suit under the governing law."  Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id.  Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being

granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990) (internal quotation marks omitted)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could

reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations and emphasis omitted). Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

### III. DISCUSSION

#### A. Supervisory Liability Under Section 1983

##### 1. *Official Capacity*

The plaintiff argues that Chief Harnett is liable for

failure to supervise in his official capacity because he knew of the danger to Glace and failed to take action to prevent that danger.

"Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.  As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (internal quotation marks and citation omitted).

"Municipal policymakers may be held liable in their official capacity under § 1983 for a failure to supervise if they 'should have known that inadequate . . . supervision was so likely to result in the violation of constitutional rights, that [they] . . . can reasonably be said to have been deliberately indifferent to the need.'"  Tylena M. v. Heartshare Children's Servs., 390 F. Supp. 2d 296, 303 (S.D.N.Y. 2005) (quoting Walker v. City of New York, 974 F.2d 293, 298 (2d Cir. 1992) (internal quotation marks omitted)).  "To prove such deliberate indifference, the plaintiff must show that the need for more or better supervision to protect against constitutional violations was obvious."  Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995).  An "obvious need" for more or better supervision "may be demonstrated through proof of repeated complaints of

civil rights violations; deliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or forestall further incidents." Id.

In the present case, the plaintiff has not alleged, much less offered evidence, that Chief Harnett or the City had knowledge of prior incidents where members of the Hartford Police Department failed to refer an individual who should have been referred to witness protection services, and despite that knowledge failed to take any action. The plaintiff fails to present even any evidence of prior incidents wherein a witness to a crime was harmed after the Hartford Police Department failed to refer him or her to witness protection services. Thus, the plaintiff has failed to show that there was an "obvious need" for more or better supervision of members of the Hartford Police Department with respect to witness protection referrals. Consequently, the plaintiff has also failed to show that the Chief Harnett or the City demonstrated deliberate indifference to the alleged need for more supervision.

Therefore, the defendants' motion for summary judgment is being granted as to the plaintiff's § 1983 failure to supervise claim against Chief Harnett in his official capacity.

   **2.   *Individual Capacity***

The plaintiff argues that Chief Harnett is liable in his

individual capacity because he was grossly negligent in failing to supervise the police officers who were investigating Robinson's murder while knowing that the plaintiff's life was in danger.

"[S]upervisory liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on respondeat superior." Hernandez v. Keane, 341 F.3d 137, 144 (2d Cir. 2003). "'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983." Id. at 144-45 (quoting Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987)). Moreover, "[f]or liability to accrue, it is not enough for the defendant to simply be a 'policy maker' at the time unconstitutional events occur." Cuoco v. Moritsugu, 222 F.3d 99, 109 (2d Cir. 2000). The Second Circuit has held that

> [t]he personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[4]  "The Second Circuit has equated gross negligence with recklessness, and ha[s] defined it as the kind of conduct . . . where [the] defendant has reason to know of facts creating a high degree of risk of physical harm to another and deliberately acts or fails to act in conscious disregard or indifference to that risk." Jones v. City of Hartford, 285 F. Supp. 2d 174, 187 (D. Conn. 2003).  In addition, the plaintiff must demonstrate an affirmative causal link between the supervisory official's failure to act and her injury.  See Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002).

In the present case, the plaintiff has not submitted evidence which could show that Chief Harnett was grossly negligent in his supervision of the detectives in charge of the Robinson murder investigation or that there is an **affirmative causal link** between a failure by him to supervise the detectives and Glace's death.

Although the plaintiff asserts that Chief Harnett received a letter and telephone call from a jailhouse informant telling Chief Harnett that Thompson was planning to have Glace murdered,

---

[4] Some district courts in this circuit have concluded that not all five of Colon's categories of conduct that may give rise to supervisory liability remain viable.  The Second Circuit has not yet addressed this issue.  However, the court does not need to determine whether all five categories remain viable because the allegations against Chief Harnett are insufficient to survive summary judgment even under the Colon standard.

the plaintiff has not produced any evidence that could support a conclusion that such letter was ever sent, nor that Chief Harnett received or read it.  Likewise, she has not produced any evidence that could support a conclusion that the alleged telephone call was ever made.

Additionally, while Chief Harnett admits that he would have been informed of the Robinson murder, there is no genuine issue as to the fact that Chief Harnett did not handle the investigation into that murder.  The investigation was handled by detectives in the Major Crimes Unit, and the plaintiff has not produced any evidence that Chief Harnett was involved in any personal capacity or had any knowledge as to whether or not Glace was referred for witness protection services.

Thus, the plaintiff has not produced any evidence that could show that Chief Harnett knew of any facts creating a high degree of risk of physical harm to Glace.  She also has not produced any evidence that could show that Chief Harnett had any knowledge of the detectives' alleged unlawful failure to refer Glace to witness protection services.  In the absence of any personal involvement, Chief Harnett may not be held liable for gross negligence based on supervising subordinates who commit unlawful acts.  Moreover, even if the plaintiff could show that Chief Harnett was personally involved in a decision not to refer Glace to witness protection services, the plaintiff has not

produced any evidence that could show that such involvement had an affirmative causal link to Glace's death.  Chief Harnett retired as Chief of Police of the Hartford Police Department in July of 2006.  Thus, at the time of Glace's murder on June 16, 2007, Chief Harnett had not been Chief of Police for almost a year.  The plaintiff does not explain how an alleged failure to refer Glace to witness protection services while he was Chief of Police could have had an affirmative causal link to her death almost a year after he retired.

Therefore, the defendants' motion for summary judgment is being granted as to the plaintiff's § 1983 failure to supervise claim against Chief Harnett in his individual capacity.

    **B.**    **Supervisory Liability under Common Law**

The plaintiff also contends that Chief Harnett and the City are liable for negligent supervision.  "Under Connecticut law, a municipal employee has a qualified immunity in the performance of a governmental duty, but he may be liable if he misperforms a ministerial act, as opposed to a discretionary act."  Wilson v. City of Norwich, 507 F. Supp. 2d 199, 211 (D. Conn. 2007).  Municipalities are similarly immune from liability "for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."  Conn. Gen. Stat. § 52-557n.

-16-

"It is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality.  The failure to provide, or the inadequacy of, police protection usually does not give rise to a cause of action in tort against a city." Gordon v. Bridgeport Housing Auth., 208 Conn. 161, 180 (1988). Additionally, the supervision of employees is generally considered to be a discretionary activity.  See Wilson, 507 F. Supp. 2d at 211 ("Generally, supervising employees is such a discretionary activity.").

    The plaintiff argues that Chief Harnett and the City are not entitled to immunity because the plaintiff was an identifiable person subject to imminent harm.  "The imminent harm exception to discretionary act immunity applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm.  By its own terms, this test requires that three parts be satisfied: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm." Violano v. Fernandez, 280 Conn. 310, 329 (2006).

-17-

In the present case, even if the court were to assume that Glace was an identifiable victim, the plaintiff has presented no evidence that Glace faced an imminent harm about which Chief Harnett and the City should have been aware. To the extent the plaintiff asserts that Chief Harnett received a letter and telephone call from a jailhouse informant indicating that Thompson wanted Glace to be killed, the plaintiff has not produced any evidence that there was such a letter or call -- much less as to when Chief Harnett would have received such a letter or call. Chief Harnett retired as Chief of Police of the Hartford Police Department in July of 2006 and Glace was killed almost a year later on June 16, 2007. Thus, even assuming arguendo that Chief Harnett had received a letter advising him that Glace's life was in danger at the end of his tenure as Chief of Police, the harm was not "imminent" as that term is used for purposes of the imminent harm exception.

Therefore, the imminent harm exception does not apply and summary judgment is being granted as to the plaintiff's state law claim for failure to supervise against Chief Harnett in his official and individual capacities.

IV. CONCLUSION

For the reasons set forth above, the defendants' Renewed Motion for Summary Judgment (Doc. No. 92) is hereby GRANTED. Judgment shall enter in favor of defendants Patrick Harnett and

City of Hartford with respect to Count Five of the Proposed Third Amended Complaint.

The Clerk shall close this case.

It is so ordered.

Dated this 22nd day of August, 2014, at Hartford, Connecticut.

/s/
Alvin W. Thompson
United States District Judge